## GOLDSTEIN ET AL. *v.* UNITED STATES.

No. 256.   Argued February 6, 1942.—Decided April 27, 1942.

*Messrs. Theodore Kiendl* and *Osmond K. Fraenkel* (with whom *Messrs. Arthur H. Schwartz* and *Edward C. McLean* were on the briefs) for Goldstein and Schwartz, respectively, petitioners.   *Herman Rubin* and *Irving Elentuch*, petitioners, submitted *pro se.*

*Solicitor General Fahy*, with whom *Assistant Attorney General Berge* and *Mr. H. G. Ingraham* were on the brief, for the United States.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case involves the alleged violation of § 605 of the Federal Communications Act [1] by the admission of testimony in a federal criminal trial.   The importance of the

---

[1] Act of June 19, 1934, c. 652, 48 Stat. 1064, 1103; 47 U. S. C. § 605.

questions presented, and a claimed conflict with our decisions, moved us to grant certiorari.

The petitioners and others were indicted under the mail fraud [2] and conspiracy [3] statutes. The alleged scheme was to defraud insurance companies by presenting false claims for disability benefits.

At the opening of the trial, the petitioners moved that the court suppress all records and transcripts of intercepted telephone messages; suppress all evidence the Government obtained by the use of such messages; suppress the testimony of any witness obtained in the first instance by the use of such messages, and that of any witness whose recollection had been refreshed or aided by such messages.

A preliminary hearing was conducted by the trial judge in accordance with the practice established in *Nardone* v. *United States,* 308 U. S. 338. The principal subject of contention was the prospective testimony of Messman and Garrow, alleged co-conspirators who, the petitioners asserted, had confessed and turned state's evidence because they had been confronted with intercepted telephone messages. Messman and Garrow were parties to these messages, or some of them, but the petitioners were not.[4] The judge ordered all records and transcripts of intercepted messages suppressed as well as all evidence obtained as a result of such messages, but he refused to order suppression of the testimony of witnesses whose memories had been refreshed or aided thereby. He reserved to the trial final decision on so much of the motion

---

[2] Criminal Code § 215; 18 U. S. C. § 338.

[3] Criminal Code § 37; 18 U. S. C. § 88.

[4] It is said that petitioners have now discovered that Goldstein was a participant in twelve of the intercepted telephone conversations, but it is admitted that the record does not disclose this fact, and there is no allegation that any of the twelve communications were used in obtaining the confessions.

as requested the suppression of testimony alleged to be the result of information derived from the messages.

At the trial, Government witnesses testified that wire tapping had not furnished clues used in preparing the case. Messman and Garrow were permitted to testify to the facts of which they claimed to have knowledge, over the objection of petitioners. They did not refer to any intercepted messages or to their contents.

The petitioners were convicted and the judgments were affirmed on appeal.[5] The Circuit Court of Appeals held that the convictions ought not to stand if either Messman or Garrow should not have been allowed to testify. It thought that the petitioners having proved divulgence by federal officers of the messages to the witnesses, the burden was upon the Government to prove that their testimony was not induced thereby; that the trial judge failed to find the wire tapping had not been a means of inducing them to testify, but found only that the petitioners had failed to prove it had been the means. In this situation the court was of opinion that if the admission of testimony induced by use of the messages was prohibited by the Communications Act, the judgments should be reversed. The court ruled, however, that, as the petitioners were not parties to any of the intercepted communications, they had no standing to object to their divulgence. In the alternative, it ruled that the testimony was not a divulgence within the meaning of § 605, but, at most, the presentation in court of evidence procured through past divulgences. The court also overruled petitioners' contentions that they had been denied their full right of cross-examination at the preliminary hearing and that the charge to the jury was improper.

We have considered all the assignments of error but find no substance in any of them save those which go to the admission of Messman's and Garrow's testimony. In

[5] 120 F. 2d 485.

briefs and oral argument, the parties have labored the subject of the burden of proof at the preliminary hearing. The petitioners say it lay with the Government after a showing of wire tapping and divulgence; the respondent says it lay with the petitioners throughout. Each asserts the other failed to carry it. In our view, a decision upon the point is unnecessary.

We come to the capital and pivotal question: Assuming the witnesses' testimony was induced by divulging to them the contents of intercepted telephone messages, was the admission of this testimony erroneous? We hold that it was not.

The petitioners assert that § 605 of the Federal Communications Act forbids the admission of evidence obtained by the use in advance of the trial of unlawfully intercepted telephone conversations, and that one who was not a party to such communications has standing to object to the admission of such evidence. They insist that the decisions of this court in *Weiss* v. *United States,* 308 U. S. 321, and *Nardone* v. *United States,* 308 U. S. 338, require us so to hold and that the court below, in ruling to the contrary, failed to follow those decisions.

It may be helpful in the consideration of these contentions to quote the relevant portions of the statute and to recapitulate this court's decisions in cases involving the admission of evidence in alleged violation of its terms. The relevant provisions of the section declare that " . . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person," and that "no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, con-

tents, substance, purport, effect, or meaning of the same
or any part thereof, or use the same or any information
therein contained for his own benefit or for the benefit
of another not entitled thereto. . . ."

In *Nardone* v. *United States*, 302 U. S. 379, we held that
the Government's introduction of transcripts and record-
ings of intercepted interstate messages in the trial of a
criminal case constituted a divulgence of such messages
contrary to the express terms of the statute.

In *Weiss* v. *United States*, 308 U. S. 321, intrastate
telephone communications were intercepted by federal
agents, their contents were divulged to certain of the
defendants, and, as a result, these defendants confessed
and agreed to turn state's evidence. They were per-
mitted to testify to the contents of the messages. We
held that the interdiction of the statute extended to the
interception and divulgence of intrastate as well as in-
terstate messages. In the light of the facts we denied
the Government's claim that the witnesses' testifying to
the contents of the messages amounted to an authoriza-
tion by them, as senders, of the divulgence of the com-
munications within the meaning of the statute.

In *Nardone* v. *United States*, 308 U. S. 338, it was
claimed that unlawfully intercepted messages had been
used to obtain evidence against the senders, and that
such use, and the introduction of the evidence so obtained,
over the objection of the senders, who were defendants,
constituted a violation of the purpose and policy of the
statute. We held that, if the facts sustained the claim,
the evidence should have been excluded, and we formu-
lated a procedure for ascertaining the facts.

In none of these cases did this court pass upon the
question now presented. In the instant case, the wit-
nesses who confessed and turned state's evidence did not
testify either to the existence of the communications or
to their contents. The contents of messages to some of

which they were parties, but to which the petitioners were not parties, were used by the Government, as we assume, to persuade the witnesses to testify. We further assume that the interception and divulgence of the messages to these witnesses was unlawful because not authorized by the sender.

The petitioners urge that our decision in *Weiss* v. *United States, supra,* necessarily involved the ruling that one who was not a party to the intercepted messages has standing to object to their divulgence at the trial, and, in view of our application of the statute in *Nardone* v. *United States,* 308 U. S. 338, he has standing to object to testimony induced as a result of unlawful interception and use of the messages.

The question now presented was not decided in *Weiss* v. *United States, supra.* The charge was conspiracy. Goldstein, who was not a participant, and other defendants, who were participants, in the intercepted conversations, were tried together. All objected to testimony respecting the conversations. We held the evidence inadmissible. The fact that Goldstein was not a party to the communications was not overlooked. In the opinion rendered by the Circuit Court of Appeals it was held that the fact could not sustain his conviction if the messages were erroneously introduced.[6] This court assumed, in deciding the case, that the Circuit Court of Appeals was right in holding that, if the admission of the evidence was wrong as to the other defendants, the

---

[6] "It may be said with some plausibility that the defendant Goldstein was not prejudiced since he was neither a party to, nor mentioned in, the conversations obtained through wire tapping. These conversations, however, showed that Goldstein's codefendants were engaged in a conspiracy which other proof indicated that he joined. They also gave credence to the testimony of Messman. Such evidence weighed against Goldstein and his conviction ought not to stand if the communications implicating the others were improperly received." 103 F. 2d 352. See also *United States* v. *Thomson,* 113 F. 2d 643.

judgment ought to be reversed as to all. And the Circuit Court of Appeals was of opinion in the present case that, in the circumstances, the messages could not have been used in the *Weiss* case against one of the defendants and excluded as to the others, with any reasonable expectation that prejudice would not have resulted to the defendants as to whom the admission of the messages would have been error.[7] In this view we concur.

None of the petitioners was a party to the communications used in obtaining the evidence in this case. No prejudice, therefore, could result by reason of the difficulty of nullifying the effect upon some defendants of evidence incompetent as to them but competent as against other defendants.

It has long been settled that evidence obtained in violation of the prohibition of the Fourth Amendment cannot be used in a prosecution against the victim of the unlawful search and seizure if he makes timely objection.[8] This, for the reason that otherwise the policy and purpose of the amendment might be thwarted. And we have further held that the policy underlying the amendment cannot be circumvented by the indirect use against the victim of evidence so obtained.[9]

Although the unlawful interception of a telephone communication does not amount to a search or seizure prohibited by the Fourth Amendment,[10] we have applied the same policy in respect of the prohibitions of the Federal Communications Act at the instance of the sender of the message against whom evidence derived from its unlawful interception is sought to be introduced. *Nardone* v. *United States*, 308 U. S. 338.

---

[7] 120 F. 2d 489.

[8] *Weeks* v. *United States*, 232 U. S. 383.

[9] *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385.

[10] *Olmstead* v. *United States*, 277 U. S. 438; *Goldman* v. *United States, post,* p. 129.

The question now to be decided is whether we shall extend the sanction for violation of the Communications Act so as to make available to one not a party to the intercepted communication the objection that its use outside the courtroom, and prior to the trial, induced evidence which, except for that use, would be admissible.

No court has ever gone so far in applying the implied sanction for violation of the Fourth Amendment. While this court has never been called upon to decide the point,[11] the federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized.[12] *A fortiori* the same rule should apply to the introduction of evidence induced by the use or disclosure thereof to a witness other than the victim of the seizure. We think no broader sanction should be imposed upon the Government in respect of violations of the Communications Act. The court below was of the view that a divulgence of the intercepted messages might lawfully be made with the consent of the sender, and we agree. The court further thought that, as the sender might make such divulgence lawful by his consent, none but he was intended to be protected against divulgence by the statute.[13] Again we agree.

---

[11] The privilege against self-incrimination afforded by the Fifth Amendment is personal to the witness. *Hale* v. *Henkel*, 201 U. S. 43; *Wilson* v. *United States*, 221 U. S. 361.

[12] The principle has been applied in at least fifty cases by the Circuit Courts of Appeals in nine circuits, and in the Court of Appeals for the District of Columbia, not to mention many decisions by District Courts. Many of the cases are collected in Note 168 to the text of the Fourth Amendment in the United States Code Annotated.

[13] It has been held that both parties to a telephone conversation are senders, as the statute uses the term. *United States* v. *Polakoff*, 112 F. 2d 888.

The petitioners, however, point out that the statute also forbids the use of an unlawfully intercepted message, or any information therein contained, by any person for his own benefit or the benefit of another not entitled thereto; and they say that the Government officials violated the Act by using the messages, and the information they contained, to induce the senders' confessions and testimony. They urge that such use is forbidden by the Act and that they have standing to object to the introduction of the evidence thus obtained. The Government answers that this provision of the Act was not intended to reach the use of the contents of the messages by federal officers for obtaining evidence, but was meant to prevent use for the personal advantage or benefit of the user. We have no occasion to determine the soundness of the Government's argument.

We are of opinion that, even though the use made of the communications by the prosecuting officers to induce the parties to them to testify were held a violation of the statute, this would not render the testimony so procured inadmissible against a person not a party to the message. This is the settled common law rule.[14] There was·no use at the trial of the intercepted communications, or of any information they contained as such. If such use as occurred here is a violation of the Act, the statute itself imposes a sanction.[15]

The judgments are

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE MURPHY, dissenting:

The CHIEF JUSTICE, MR. JUSTICE FRANKFURTER, and I cannot agree with the opinion of the Court.

---

[14] *Olmstead* v. *United States,* 277 U. S. 438, 466, 467.

[15] § 501, 47 U. S. C. § 501.

Messman and Garrow were the chief witnesses for the Government, and the testimony of each was vital. It is not disputed that Messman turned state's evidence after he was confronted with the contents of telephone messages which implicated him in the offense, but which had been obtained by wire-tapping in violation of § 605 of the Federal Communications Act. The extent of the unlawful "tapping" and the keen desire of the Government officials to use the "taps" to secure other testimony are graphically illustrated by the following statement made by an assistant United States attorney to Messman after his arrest:

"I am telling you before we go any further that there is no use of us kidding each other. We have watched your telephone; we have watched all these lawyers' telephones; we have had rooms tapped. We know what is going on. We are not stabbing in the dark. If you want to hear your voice on a record we will be glad to play it. In your instance, Doctor, there is so much to cover. You have been in this for so many years that we feel that in order for you to help yourself, since you are considered one of the principals here, it would be wise for you to indicate to us whether you intend to tell us everything and come clean, or whether you intend to play ball with the Garrows and the rest of the crowd. We feel that you can be of great value and you want to help yourself. That is straight talk."

And Garrow knew of the existence of records of damaging conversations made by illegal "taps" on his lines before his decision to testify for the Government.

Neither the intercepted messages nor their purport were placed in evidence, and, so far as the record shows, petitioners were not parties to them. It is evident, nevertheless, that the evidence adduced by the Government against petitioners through the testimony of Messman and Gar-

row was obtained by the use of information gathered by wire-tapping in violation of law.[1]

The main question presented for decision is whether evidence so obtained is vitiated and rendered inadmissible by § 605, the relevant part of which reads:

". . . and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; . . . and no person having received such intercepted communi-

---

[1] Both Messman and Garrow testified at the preliminary hearing that the "taps" did not influence their decisions to testify for the Government, but each was an accomplished perjurer. We do not understand that the trial judge, in ruling that the testimony of Messman and Garrow was admissible, meant to find that the Government proved that the "taps" did not contribute to their breakdown. On the contrary, it is clear that he meant to find only that petitioners failed to carry the burden of proving that the Government secured the testimony of Messman and Garrow by use of the "taps," a burden which he erroneously put upon petitioners. For after an accused sustains the initial burden, imposed by *Nardone* v. *United States*, 308 U. S. 338, of proving to the satisfaction of the trial judge in the preliminary hearing that wire-tapping was unlawfully employed, as petitioners did here, it is only fair that the burden should then shift to the Government to convince the trial judge that its proof had an independent origin. As the court below said:

". . . this should be the rule in analogy to the well settled doctrine in civil cases that a wrongdoer who has mingled the consequences of lawful and unlawful conduct, has the burden of disentangling them and must bear the prejudice of his failure to do so; that is, that it is unfair to throw upon the innocent party the duty of unravelling the skein which the guilty party has snarled. To impose the duty upon the prosecution is particularly appropriate here, for it necessarily has full knowledge of just how its case has been prepared; given a prima facie case against it, i. e., 'taps' and some use of them, it should do the rest." 120 F. 2d 485, 488.

Since the trial judge did not shift the burden to the Government after petitioners' initial showing as he should have done, there can be no contention on this record that the testimony of Messman and Garrow was untainted by "taps."

cation or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, *or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto . . ."* [2]

The statute expresses a rule of public policy. In enacting § 605, Congress sought to protect society at large against the evils of wire-tapping and kindred unauthorized intrusions into private intercourse conducted by means of the modern media of communication, telephone, telegraph, and radio. To that end the statute prohibits not only the interception and the divulgence of private messages without the consent of the sender, but also the use of information so acquired by any person not entitled to it. The protection of the statute would have been illusory indeed if, while interception and divulgence were penalized, one was free, nevertheless, to use information so obtained. Unless the language of the "use for benefit" prohibition does not mean what it says, the actions of the Government agents in securing the benefit of the crucial testimony of Messman and Garrow by the use of illegal "taps" were clear violations of that prohibition. There is no merit in the Government's contention that the unequivocal language of the "use for benefit" clause should be construed as condemning only such uses as are designed to result in some monetary or other similar benefit of a private nature, for the prohibitions of § 605 are applicable to the Government and its officers, as well as to private persons. *Nardone* v. *United States,* 302 U. S. 379. The prohibition in this last clause of § 605 by Congress of the "use" of outlawed evidence is so unequivocal

---

[2] Emphasis added.

and controlling that the failure of the court below even to refer to this clause can only be explained on the assumption that it was overlooked.

On the issue of admissibility, the second *Nardone* case, 308 U. S. 338, the logical extension of the principles of *Nardone* v. *United States,* 302 U. S. 379, and *Weiss* v. *United States,* 308 U. S. 321, should control our decision. In that case, as in this, the evidence in dispute was not the messages themselves or their purport, but the claim was made that other evidence against the defendants was obtained by the use of information gained by unlawful wire-tapping. We held that the policy of § 605 required the exclusion not merely of the intercepted messages but also of the other evidence acquired through their unlawful use. Otherwise the broad purpose of the statute to outlaw practices "inconsistent with ethical standards and destructive of personal liberty"[3] would have been largely defeated. We also suggested the preliminary hearing as a procedure for determining what evidence was the "fruit of the poisonous tree" and hence inadmissible. Since the preliminary hearing in this case leaves no doubt that the testimony of Messman and Garrow was the forbidden fruit, it should not have been admitted.

The only possible differentiation between this case and the second *Nardone* case is that, here, petitioners were not parties to the illegally intercepted messages, but that calls for no difference in legal result. While the sender can render interception, divulgence, or use lawful by his consent, it is a complete *non sequitur* to conclude that he alone has standing to object to the admission of evidence obtained in violation of § 605. To say that petitioners have no standing to object to the testimony of Messman and Garrow because they were not parties to the inter-

---

[3] *Nardone* v. *United States,* 302 U. S. 379, 383.

cepted messages used to secure that testimony, is to ignore the governing factor that controlled our decision in the second *Nardone* case, namely, that to permit the use of evidence so obtained would defeat or substantially impair the underlying policy and purpose of § 605. It is immaterial, for the object to be served by that section, whether objection is made by the one sending the communication or by another who is prejudiced by its use. The rule that evidence obtained by a violation of § 605 is inadmissible is not a remedy for the sender; it is the obedient answer to the Congressional command that society shall not be plagued with such practices as wire-tapping.

Lower federal court cases to the effect that only the victim of a search and seizure contravening the Fourth Amendment can object to the evidence thereby obtained do not offer a proper analogy. Not only are those decisions hard to square with statements by Mr. Justice Holmes in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392,[4] but, even assuming their soundness, sufficient difference in scope exists between § 605 and the Fourth Amendment to render analogy unsafe. Thus § 605 forbids all interception, divulgence, or use by any

---

[4] "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. ... the knowledge gained by the Government's own wrong cannot be used by it in the way proposed."

The guaranties of the Fourth Amendment "are to be liberally construed to prevent impairment of the protection extended." *Grau* v. *United States,* 287 U. S. 124, 128, and cases cited.

It is evident that to allow the Government to use evidence obtained in violation of the Fourth Amendment against parties not victims of the unconstitutional search and seizure is to allow the Government to profit by its wrong and to reduce in large measure the protection of the Amendment.

person without the consent of the sender, while the Fourth Amendment bans only unreasonable searches and seizures.

The holding in the opinion of the Court that evidence obtained in violation of § 605 is not rendered inadmissible because § 501 of the Act provides specific sanctions for violations of § 605, is a direct repudiation of both *Nardone* cases and the *Weiss* case. In each of those cases, evidence secured by violation of § 605 was declared to be inadmissible, despite the existence of § 501. This is so because, as we held in the first *Nardone* case, "the act forbids such testimony." 302 U. S. 379, 382. That evidence procured in violation of federal law by agents of the Government is inadmissible in federal prosecutions has been established and enforced by an unbroken series of decisions in this Court beginning with *Weeks* v. *United States,* 232 U. S. 383. By these decisions this Court has refused to make itself a participant in lawless conduct by sanctioning the use in open court of evidence illegally secured. That principle was forcibly put in a separate opinion in *Sorrells* v. *United States,* 287 U. S. 435, 453. After referring to "the inherent right of the court not to be made the instrument of wrong," the opinion continues: "The doctrine [the defense of entrapment] rests, rather, on a fundamental rule of public policy. The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law." 287 U. S. 435, 456, 457. When Congress condemned the "use" of lawlessly intercepted communications, the last thing it intended to sanction was the use of such interceptions in a court of justice. There can be no reason to ignore or silently overrule our considered decisions in both *Nardone* cases and the *Weiss* case, especially in view of the fact that Congress has had several opportunities since the first *Nardone* case to amend § 605

to obviate the result of that case if it were not a true interpretation of Congressional policy and intent.[5]

---

[5] Several attempts to amend § 605 since the first *Nardone* case have failed of enactment.   See S. 3756, 75th Cong., 3d Sess. (1938) and S. Rep. No. 1790, 75th Cong., 3d Sess. (1938) p. 3.   See also H. J. Res. 571, 76th Cong., 3d Sess. (1940); H. R. 2266, 77th Cong., 1st Sess. (1941); H. R. 3099, 77th Cong., 1st Sess. (1941); H. R. 4228, 77th Cong., 1st Sess. (1941).