**UNITED STATES of America,**
**Libelant,**

v.

**FOUR THOUSAND ONE HUNDRED AND SEVENTY ONE DOLLARS ($4,171.00) IN UNITED STATES CURRENCY, Respondent.**

Civ. A. No. 59 C 1168.

United States District Court
N. D. Illinois, E. D.

Dec. 6, 1961.

James P. O'Brien, U. S. Atty., D. Arthur Connelly, Thomas W. James, Asst. U. S. Atty., Chicago, Ill., for libelant.

Richard E. Gorman, Chicago, Ill., for claimant.

CAMPBELL, Chief Judge.

This is a libel proceeding filed by the United States to perfect forfeiture under Title 26 U.S.C.A. § 7302 of $4,171.00 in United States Currency. The libel alleges that on May 21, 1959, Harold R. All, District Director of Internal Revenue, Treasury Department, through agents under his direction and control, acting under the authority of the Secretary of the Treasury, seized $4,171.00 in United States Currency and that this currency was being used and was intended for use in violation of the Internal Revenue Laws in the operation of a bookmaking business located at 2115 W. Berteau St., Chicago, Illinois. It is further alleged that said bookmaking business was being operated in violation of the Internal Revenue Laws in that it was conducted without the owners or operators having paid the special tax imposed upon such persons, and without the owners or operators having registered with the District Director of Internal Revenue, as required by law.

On August 26, 1959 one Roy Fielmann filed an answer to the libel claiming to be the owner of the currency. On May 31, 1961, claimant Fielmann moved the Court to suppress the currency evidence alleging it was acquired in consequence of an illegal search and seizure. At the trial claimant received leave to amend his motion to suppress to include papers that were also seized at the time of the search. Upon agreement of the parties the motion to suppress and the general issue were tried together.

The evidence adduced at the trial is as follows: On May 19, 1959, Chicago Police Officers assigned to the gambling detail and working out of the Police Commissioner's office, went to the home of claimant Fielman to investigate a complaint that a wire room was being operated on the premises. Arriving at approximately 2:00 P.M., at 2115 W. Berteau St., Chicago, Illinois, the officers went to the rear of the building, and while standing on

the porch of the second floor near the kitchen window they heard voices in the apartment saying: "Three ways at Washington Park, $5; for $2 to win". Several times they heard phones ringing. They proceeded around to the front door and as they approached a woman later identified as Mrs. Fielmann was letting a man out of the apartment. The officers, without a search warrant, forced entry into the apartment. Fielmann was found in the kitchen stuffing divers racing records, papers, and $4,171.00 in loose singles, tens and twenties behind the radiator. In answer to one of the officer's inquiry, Fielmann stated the money was used to settle customer debts. During the fifteen minutes the officers were in the apartment they answered both of two phones that were located in the kitchen. The callers attempted to place bets. One of the telephones was illegally tapped from the apartment on the first floor.

Fielmann was charged by the Chicago Police with keeping a record of bets under Chapter 38, Section 336, Illinois Revised Statutes. On June 11, 1959, in pursuance of a motion to suppress, the Municipal Court of the City of Chicago discharged Fielmann.

Two issues are presented in this case; first the motion to suppress, and secondly, whether the evidence is sufficient to show the money in question was used in violation of the Internal Revenue Laws.

Cases similar to this have on many occasions been considered by the federal courts. The reasoning adopted and the conclusions reached has not been uniform, rather, a state of confusion and ambiguity seems evident in reported decisions relating to this issue. The Supreme Court has yet to consider the issue herein presented and therefore I shall undoubtedly add to the confusion in my efforts to now resolve these issues. In United States v. Plymouth Coupe, 182 F.2d 180, 182, the Third Circuit Court of Appeals stated: "In no case * * * has the Supreme Court expressly dealt with the effect in forfeiture proceedings of unlawful seizure by federal officers." Under the present state of the law, the fact that a search was conducted by federal officers, as distinct from state officers, is of little consequence. In the past when factual circumstances were such as we have here the issue presently before me need not be considered. But, since the recent cases of Elkins v. United States, (1960) 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 and Rios v. U. S., (1960) 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 have resulted in a quietus of the "silver platter" doctrine, this issue can no longer be put aside. Rather, it now seems that we may expect a marked increase in cases wherein the resolution of this issue will be all decisive.

With reference to claimant's motion to suppress, the Government's brief argues that the right to have evidence suppressed does not apply to civil cases, and that this being a libel action the motion should be denied. In support of this contention the Government's brief cites federal cases wherein the courts followed this principle and adopted it as the law. Speaking on factual situations much similar to these in this case, the Fourth Circuit stated that in a forfeiture action "considerations which, in criminal cases, require the suppression of evidence obtained in an unlawful search or seizure have no application * * * *". United States v. One 1956 Ford Tudor Sedan, (1958), 253 F.2d 725, 727. Also, the Fifth Circuit in Martin v. United States, (1960) 277 F.2d 785, 786, speaking of a libel action observed: "As this is not a criminal prosecution but merely an effort to effectuate a forfeiture arising from illegal use of the property involved, the legality of the search and seizure cannot be raised."

■ Although, as a general rule, the right to have evidence suppressed does not apply to civil cases, the Supreme Court has set forth an exception to this rule. In Boyd v. U. S., (1886), 116 U.S. 616, at 634, 6 S.Ct. 524 at 534, 29 L.Ed. 746, the Court states, "proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though

they may be civil in form, are in their nature criminal." The Court referring to such actions as being "quasi-criminal" in nature, stated that the protection of the Fourth Amendment against unreasonable search and seizure must apply to such forfeiture cases. In United States v. One 1946 Plymouth Sedan Automobile, (1948), 167 F.2d 3, the Seventh Circuit Court of Appeals had before it facts much similar to those in this case. In reversing the decision of the District Court, they held that the search and seizure in that case was not illegal, and that the evidence should not then have been suppressed. But, the Court stated at page 5: "If the search and seizure were illegal, the case should be affirmed;". The District Court had suppressed the evidence in the action of libel for forfeiture. With due deference to the Fourth and Fifth Circuits, my own opinion is that illegally seized evidence is inadmissible not only in criminal prosecutions, but in forfeiture proceedings of this kind. United States v. Physic, (1949), 2 Cir., 175 F.2d 338; United States v. Butler, (1946), 10 Cir., 156 F.2d 897; Rogers v. United States, (1938), 1 Cir., 97 F.2d 691.

■ The Government's brief calls the Court's attention to a Memorandum of Judge Robson of this Court, dated September 21, 1960. In considering a motion to suppress filed in a libel proceeding, Judge Robson held the claimant did not have "standing" to move for the suppression of the evidence. The memorandum ably and correctly stated that the forfeiture took place upon the commission of the illegal act, and that: "It has long been held that one without title may not question validity of seizure." I acknowledge the qualification under Rule 41 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., requiring the person bringing a motion to suppress to be a "person aggrieved" as those terms are used in the Rule. One is said to be a "person aggrieved" or have the requisite "standing" where such person; 1) owned or possessed the property, or 2) *where he had a substantial possessory interest in the premise searched*. The facts·in the case presently before me clearly establish claimant's possessory interest in the premise searched. Accordingly, the claimant in this case does have the requisite "standing" necessary to assert a motion to suppress. The fact that the money in question may have been forfeited prior to the search and seizure would have no bearing on this case. See Jones v. U. S., (1961), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 697. ·

■ The evidence of this case clearly establishes the existence of a search and seizure performed without the issuance of a search warrant. On the other hand the evidence fails to show the source or the nature of the information that initially directed the officers to the claimant's apartment. Once at the apartment, and then solely on the basis of the overheard conversation the officers forced entry. The State authorities having found the search and seizure herein to have been illegal, so also I find that the entry was in violation of the Constitution. Accordingly, the motion to suppress the money in question and the papers seized at the time of the illegal search and seizure is granted.

■ I now consider claimant's argument wherein he asserts that there must be a lawful seizure to obtain jurisdiction over the subject matter of an in rem suit. This Court having determined that the money in question was acquired through an illegal search and seizure, claimant argues that such wrongful possession by the government precludes this Court from having the res before it. Claimant's position is not without judicial support. In Daeufer-Lieberman Brewing Co. v. U. S., (1925), 8 F.2d 1, the Third Circuit held that the existence of the asserted right to forfeit was dependent upon the alleged seizure being lawful. The Court finding the seizure to have been unlawful, as I have done in this case, concluded they did not have jurisdiction over the res. No issue relating to a motion to suppress was considered.

The Court predicated its decision on a statement contained in the case of Gelston v. Hoyt, (1818) 3 Wheat. 246, 4 L.Ed. 381. In the Gelston case at page 318 the Supreme Court stated the sole object of a forfeiture suit "is to ascertain whether the seizure be *rightful*" (emphasis added). The Daeufer Court then used the word "rightful" in the sense of being an antonym of the word "unlawful", as the latter term is used when referring to an "unlawful" search and seizure. They concluded that inasmuch as the seizure in question was in contravention of the Fourth Amendment of the Constitution, it was "unlawful".

The term "rightful" has still another meaning, a meaning wherein it is indeed to be distinguished from the word "lawful". One may be said to have a "right" to a thing because of paramount ownership. It is this "right" of ownership that is the issue and crux of a forfeiture action. Thus, one may assert a "right" to take a res claiming paramount ownership therein. A forfeiture proceeding would be one of the proper judicial recourses to ascertain or determine the existence or nonexistence of the asserted right. Assuming one did have the "right" to take or seize a particular object or res, the fact that he exercised this right by means of an "unlawful" seizure would have no bearing on the property right asserted. The acquisition of one's own property in an "unlawful" manner would in no way affect the owner's initial property right therein, although it could have the effect of resulting in a legal action against the owner. I am of the opinion that the Supreme Court in the Gelston case used the term "rightful" seizure to mean property right, and not to mean the method or means in which this property right is exercised.

In 1950 the Third Circuit decided the case of U. S. v. Plymouth Coupe, 182 F.2d 180. The Court there asserted its adherence to the Daeufer case, but in so doing at page 182 stated: " * * * the rule fits in with the well established line of cases which requires *the exclusion of*

*evidence* unlawfully obtained." (Emphasis added.) While acknowledging the existence of contra opinion in other circuits, the Court comes to the same conclusion as the Court in the Daeufer case, but, does so on the basis of different legal reasoning. The acquisition of jurisdiction over a res, and the exclusion of a res in evidence are fundamentally distinct issues. Although I do not agree with the Court's acceptance of the Daeufer case, I do agree with their legal reasoning.

Notwithstanding this issue having on many occasions been presented to the federal courts, only the Third Circuit and a District Court Judge in U. S. v. Two Soaking Units Etc., (1930), 44 F.2d 650 have held that a court is without jurisdiction in a forfeiture case when the res is obtained pursuant to an illegal search and seizure. Not only have the other circuits taken a contrary view, but, Justice Holmes in Dodge v. U. S., (1926), 272 U.S. 530, 532, 47 S.Ct. 191, 192, 71 L.Ed. 392, stated: "The jurisdiction of the Court was secured by the fact that the *res* was in possession of the prohibition director when the libel was filed." Three sentences later he stated: "The exclusion of evidence obtained by an unlawful search and seizure stand on a different ground." See also: Strong v. United States, (1931) 1 Cir., 46 F.2d 257; U. S. v. Eight Boxes . . ., 2 Cir., (1939), 105 F.2d 896; and U. S. v. Pacific Finance Corporation, 2 Cir., (1940) 110 F.2d 732.

Following my own belief on this matter and what I regard as the weight of legal opinion, I find this contention of the claimant is not sustainable. I acknowledge the fact that the res must be brought before the court in an in rem action, either actually or constructively. I further acknowledge the fact that this could require a seizure of the res. But, notwithstanding the impropriety of the method of acquisition, the res in this case was in the possession of the United States when this libel was filed. The legality of the seizure does not affect the issue of jurisdiction unless the statute under

which the proceeding is brought so conditions it. Title 26 U.S.C.A. § 7302, does not contain such a condition. Thus, as a Court need not question the manner through which a person is brought before it in an *in personam* action, so also I need not now question the means by which this res was initially seized.

■■ Having found the presence of jurisdiction and having granted the motion to suppress I now consider the general issue. The question is, do we have sufficient evidence from a source independent of the illegal search and seizure to warrant a finding that the money in question was being used in violation of Internal Revenue Law?

The following evidence, which was neither obtained during, or resulted from the illegal search and seizure, is presently before me. Two Chicago Police Officers assigned to the gambling detail suspected the claimant of operating a wire room. They decided to investigate their suspicions. Arriving at the claimant's apartment the officers heard several phones ringing and heard voices state: "Three ways at Washington Park, $5; for $2 to win." In addition to this evidence, claimant in his answer, admits occupancy of the apartment. He admits to conducting a bookmaking business, and states he kept and maintained records and documents of this business in his apartment. Further, he admits that in the conduct of his bookmaking business he failed to pay the tax required, and that he failed to register with the Internal Revenue Service. He acknowledges possession of the $4,171.00, but, alleges this money was not used in the bookmaking business. He avers that $3,000 of this sum had been given him by his sister to be held in safe keeping for her use in the purchase of a residence.

The pleadings would appear to resolve the issue as to whether or not, in the operation of his bookmaking business, claimant made payments and, or, collected money at his apartment.

This being a civil action the burden of proof is not as it would be in a criminal case. It is unnecessary that the Government prove its claim beyond a reasonable doubt. It need only preponderate on the evidence so as to establish the material allegations of the libel. See: Coffey v. U. S., 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684. The evidence based on information acquired during the illegal search and seizure is inadmissible, but, having so excluded such evidence does not mean that the facts occurring prior to the illegal entry are thereafter sacred and inaccessible. Here all of the facts necessary to prove the libel were overheard by the Police Officers long before they forced entry to claimant's apartment. Justice Holmes in Silverthorne Lumber Co. v. U. S., (1919), 251 U.S. 385 stated at page 392, 40 S.Ct. 182 at page 183, 64 L.Ed. 319: "If knowledge of them is gained from an independent source they may be proved like any others * * *".

I am of the opinion that having excluded the evidence obtained in connection with the unlawful search and seizure, there is still sufficient proof on which to predicate the forfeiture in this action for libel.

I find it beyond the limits of reasonable credulity to suppose that this bookmaking operation was any different from others of its kind. A business of this nature must of necessity operate with money; customers must deposit money when placing their bets and those few who are fortunate enough to win must be rewarded in kind. It is also significant that claimant omitted to place his sister on the stand to give evidence as to the allegations suggested in his answer. For that matter, claimant did not proffer any witnesses at all.

Accordingly I find most adequate evidence to support the allegations of the libel. I therefore adjudge and decree that the said $4,171.00 in United States Currency be and the same is hereby declared forfeit to the United States of America. Judgment accordingly.