**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Maceo THOMAS, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gus SAUNDERS and Eloise Saunders,
Defendants-Appellants.**

**Nos. 15549, 15550.**

United States Court of Appeals
Sixth Circuit.

Feb. 12, 1965.

Earl E. Strayhorn, Chicago, Ill. (R. Eugene Pincham, Chicago, Ill., Milton R. Henry, Pontiac, Mich., on the brief; Rogers, Strayhorn & Harth, Pincham, Evins, Fowlkes & Tucker, Chicago, Ill., of counsel), for appellants.

Milton J. Trumbauer, Jr., Asst. U. S. Atty., Detroit, Mich. (Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before CECIL, O'SULLIVAN and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

The three defendants in these appeals were convicted by a Federal jury of conspiracy to violate the narcotic laws of the United States. The indictment charged, and the prosecution's proofs tended to show, that defendants Gus and Eloise Saunders, during the years 1960 and 1961, together with others, participated in a narcotic peddling operation in Detroit while procuring their supply of narcotics from defendant Maceo Thomas in Chicago.

Proof of the basic conspiracy is clear and convincing, provided the testimony of a co-conspirator, one Ferguson, is accepted as credible. Ferguson's testimony is summarized as follows in appellants' brief:

"John Theodore Ferguson, a resident of the City of Detroit met one of the defendant-appellants, Gus Saunders, about the middle of May 1960 in Detroit. They became associated in the business of selling narcotic drugs and in October 1960 the witness had a conversation with Gus Saunders about making a better deal for the purchase of their narcotic supply. The witness stated that Gus said they could get a better deal in Chicago and that he (Ferguson) should save his money that they were going to Chicago together.

"On October 23, 1963, [SIC, 1960] Ferguson and Gus Saunders flew from Detroit to Chicago where they registered under assumed names in the Evans Hotel. Before leaving Gus told the witness that Eloise knew someone in Chicago named Maceo Thomas. Gus and Ferguson after checking into the Hotel Evans about 10 or 11:00 o'clock p. m. went to the Impala Lounge where they met Maceo Thomas. Gus told Maceo Thomas that he had $1,500.00 to spend and he wanted to talk business about some dope. They went over to the side in a booth and began to talk. The witness saw Gus give Maceo an envelope like the one in which he had seen the $1,500.00 before leaving the hotel. The witness did not hear the conversation in the booth.

"The witness further testified that the next morning he and Gus Saunders went over to Maceo-Thomas' home and that while there the door-bell rang and Maceo Thomas answered it and came back with a

brown paper bag. He stated that he, Gus and Maceo took the bag into the bath room and opened it and that there was 8 or 9 celluloid bags in it, that one of the bags was opened and tested and found to contain heroin. That they subsequently returned to the Hotel Evans where he and Gus brought a box and some string and put the brown paper bag in the box with a coat and addressed it to a Delores Davis in Detroit and air-expressed the box back. He states that Gus told him that Eloise would pick the box up in Detroit.

"The two men then returned to Detroit and the witness was driven home by Gus and that about two hours later Gus picked him up and the two of them drove over to 210 Chandler Street where the witness saw the box which he had shipped to Detroit from Chicago. The narcotics were removed from the box and he and Gus packaged the stuff after cutting it."

In arguing that the proofs do not establish defendants' guilt beyond a reasonable doubt, appellants rely strongly upon the criminal record and bad character of Ferguson, who was doubtless the most damaging witness against them.

The meticulous care with which the prosecution buttressed Ferguson's testimony did nothing for his character, but did lend weight to his testimony in this case. Thus, when Ferguson testified that he and Gus Saunders went to Chicago and stayed overnight at the Evans Hotel under certain assumed names, the hotel register was produced with registrations for those names shown for that night. Where Ferguson testified that Saunders twice called Eloise Saunders in Detroit —once from Maceo Thomas' Impala Lounge and once from the Evans Hotel—records from the telephone company were introduced to show long distance calls corresponding exactly to this testimony. One of these records also served to confirm use of one of the assumed names in the hotel register. And where Ferguson testified that he and Saunders shipped the narcotics by air to Eloise Saunders in Detroit, before they themselves got a plane to come back, an airplane shipping ticket was produced which corresponded exactly to the transaction described.

In addition, Ferguson testified that after returning to Detroit, Gus Saunders told him that he was sending money to Maceo Thomas by money order, and the prosecution produced three cashier's checks for $1,250, $1,500 and $1,000 purchased in Detroit by Eloise Saunders and cashed in Chicago by Maceo Thomas in November and December of 1960.

Other proofs of overt acts in 1960 and 1961 (including testimony of another co-conspirator pertaining to a large purchase in the fall of 1961) served to establish the continuing nature of the conspiracy as to all three of these defendants.

■ We have no doubt that the trial judge was right in denying defendants' motion for a directed verdict of acquittal and that there was proof from which the jury could have determined defendants' guilt beyond a reasonable doubt.

Nor do we find reversible error in relation to any disputed admission of evidence during the trial.

■ Although the issue of the legality or illegality of the search of premises at 5132 Burns was not determined at trial, the District Judge ruled that certain money orders were admissible as to defendants. A careful search of this record shows that none of these defendants either owned, possessed, or lived at the searched premises or were present at the search.

In addition the search at 5132 Burns was plainly not directed against any of the present defendants, nor did any of them show any possessory interest as to any object seized therein. Cf. Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

The District Judge rightly held on these facts that defendants had "no standing to raise a question as to the constitutionality of the search." United States v. Haley, 321 F.2d 956, 959 (C.A.

6, 1963); Goldstein v. United States, 316 U.S. 114, 121, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942). See also Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

This is the second prosecution of Gus Saunders and Eloise Saunders on narcotics charges. The facts of the first prosecution for possessing and selling heroin are reported in this court's opinion in United States v. Saunders, 325 F.2d 840 (C.A. 6, 1964), wherein this court affirmed the conviction of Gus Saunders and reversed that of Eloise Saunders. In that case each of the Saunders was found guilty of selling narcotics in two separate incidents—on November 9, 1960 and November 15, 1960—to one Therland Crater, one of the co-conspirators named in this case. Crater had been involved in peddling narcotics himself, had been arrested by an undercover government agent who bought heroin from him, and had agreed to cooperate with the government himself and had done so in relation to the November 9, 1960 and November 15, 1960, contacts with Eloise and Gus Saunders.[1]

Testimony from government agents who witnessed the Crater-Eloise Saunders contact of November 9, 1960, and the Crater-Gus Saunders contact of November 15, 1960, was presented in the course of the present conspiracy prosecution.

■ By separate brief filed *pro se* from prison, Gus Saunders contends that the facts related above represent violation of the prohibition against double jeopardy contained in the Fifth Amendment.

As to this contention (not advanced in the appellant's brief filed on behalf of the defendants) there is settled law which holds that double jeopardy is not a defense available to prevent prosecution for a conspiracy to combine with others to commit crimes where one or more of those crimes have previously been the subject of convictions when charged as substantive offenses against individual defendants.

Mr. Justice Douglas' opinion in Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) gives this definitive statement of the matter:

"It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established. Clune v. United States, 159 U.S. 590, 594–595, 16 S.Ct. 125, 126, 40 L.Ed. 269. A conviction for the conspiracy may be had though the substantive offense was completed. See Heike v. United States, 227 U.S. 131, 144, 33 S.Ct. 226, 228, 57 L.Ed. 450, Ann.Cas.1914C, 128. And the plea of double jeopardy is no defense to a conviction for both offenses." Pinkerton v. United States, supra at 643, of 328 U.S., at 1182 of 66 S.Ct. See also Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

■ Finally, the Saunders argue that this entire proceeding should be voided because of testimony originally presented to the indicting grand jury which they claim to have been violative of a government promise and hence incompetent. It is the Saunders' claim that after their arrest in November of 1960 they were urged by government agents to turn over the narcotics which they had and that they did so as a result of threats to prosecute their children (then 17 and 18 years old) and a promise not to use the narcotics they surrendered in any prosecution of them (i. e. Eloise and Gus Saunders).

This entire argument was presented to the District Judge who heard this con-

---

1. Crater did not testify in either the prior prosecution or the instant case. He was murdered in Toronto in November of 1961. See United States v. Saunders, supra at 842 of 325 F.2d n. 1.

spiracy prosecution on defendant's motion to dismiss Paragraphs 10 and 11 of the instant indictment. During that argument the colloquy discloses the prosecution's view that the promises were conditional:

"Mr. Trumbauer: The Government does admit that this evidence which is set forth in Count 10 and 11 [2] was obtained from Mr. Saunders—

"The Court: (Interposing) As set forth in the transcript of—

"Mr. Trumbauer: —by virtue of a promise that he would not be prosecuted for this, if he got out of the business and if he—further if he found out—

"The Court: (Interposing) I assume stayed out—

"Mr. Trumbauer: —the identitfy of the informant in the case for which he was then being prosecuted that he would make no attempt to get in touch with him.

"The Court: Intimidate him.

"Mr. Trumbauer: Intimidate him; anything of that nature. * * * "

Whatever the merit of this argument, it is clear that the District Judge decided to disregard the conditions referred to (and their claimed violation) and to grant the motion to quash the paragraphs complained about.

The paragraphs of the instant indictment relating to the Saunders' possession of the narcotics which they surrendered were dismissed and none of this evidence actually got before the jury or was in anywise involved in the trial of this case.

Appellants, however, take the position that the fact that the surrendered nar-

cotics were used to procure the conspiracy indictment, even though that indictment was supported by other competent evidence, so infected the indictment and the subsequent proceedings as to require us (presumably in the discharge of our responsibilities for supervision of the federal judicial system) to invalidate the indictment and vacate the sentences currently appealed from.

In Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) and Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), the United States Supreme Court held that the fact that some incompetent evidence was presented in securing an indictment does not render that indictment invalid.

The United States Supreme Court also dealt with the argument advanced here, that this court should invalidate this indictment in the exercise of its supervisory powers to procure "fundamental fairness." Mr. Justice Black's opinion in Costello v. United States, supra, said:

"Petitioner urges that this Court should exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change." Costello v. United States, supra at 363–364 of 350 U.S., at 409 of 76 S.Ct.

Affirmed.

---

2. Actually this conspiracy indictment was a one-count indictment with 15 numbered paragraphs alleging overt acts. The material stricken from the indictment was Paragraphs 10 and 11 alleging overt acts of possession of the surrendered heroin.