UNITED STATES of America, Plaintiff,

v.

ONE 1963 CADILLAC COUPE de VILLE TWO-DOOR, Motor and Serial Number 63J002241, 8-cylinder, Defendant.

No. 906.

United States District Court
W. D. Missouri,
Central Division.

Feb. 11, 1966.

F. Russell Millin, U. S. Atty., Clifford M. Spottsville, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Leon G. Kusnetzky, Kansas City, Mo., for claimant.

JOHN W. OLIVER, District Judge.

Plaintiff filed its libel against the defendant 1963 Cadillac on October 1, 1963. Charles L. Eaton, as a claimant to the automobile, filed an answer to the libel on October 28, 1963. There apparently is no question but that Eaton holds a purchase money first mortgage lien on the automobile securing the note dated June 25, 1963 of one Richard G. Thomas in the original amount of $6,242.00. Thomas was driving the Cadillac when allegedly it was seized by Federal Narcotic Agents in Sedalia, Missouri, on September 9, 1963.

Because of changes in divisional assignments, we are the third judge of this Court to exercise jurisdiction over this case. On March 3, 1964 Judge Gibson struck paragraphs 5 through 9 of defendant's answer. On February 5, 1965 Judge Becker struck paragraphs 10 and 11 of defendant's answer. The action of both judges was based on United States v. One 1941 Plymouth Tudor Sedan, 10 Cir. 1946, 153 F.2d 19.

This left on the record only that portion of claimant Eaton's denial of the li-

bel that placed in issue the plaintiff's allegations that the United States was and is a sovereign power; that the Cadillac was in fact seized on September 9, 1963 at Sedalia, Missouri, for an alleged violation of §§ 4742(a) and 4744 (a) of Title 26, United States Code; that the Cadillac has since remained in the custody and possession of the Federal Narcotic Agents as forfeited; that contraband in the form of marihuana had and was in fact concealed and possessed in or upon the Cadillac at the time of the seizure; that the Cadillac in fact was used to facilitate the transportation, carriage, conveyance, and concealment of the contraband marihuana in violation of §§ 781–788, Title 49, United States Code; and that by operation of law the vehicle became and was forfeited to the United States.

While claimant has been extremely reluctant either to respond fully and candidly to the request for admissions filed by the Government or to the order entered at the pretrial conference by Judge Becker on March 1, 1965, it is nevertheless apparent that Eaton's claim in this case is seemingly based on legal, as distinguished from factual, grounds.

In a response filed to plaintiff's State of Facts on May 28, 1965, claimant Eaton states:

> If the Plaintiff's Statement of Facts is taken as true, it is submitted that it would nevertheless show that no legal arrest was made in this case, no legal search was made in this case and that, therefore, whatever evidence, if any, was obtained should be suppressed and ruled inadmissible and, if so, the plaintiff's libel thereby fails.

This memorandum and order is written upon the assumption that Eaton's claim does in fact rest on the legal ground briefed.

Whether we need to inquire into the legality of the search for the marihuana is dependent upon the legal question of whether Claimant Eaton, the holder of a chattel mortgage lien has the requisite standing to contest the admissibility in evidence in the libel case of any of the marihuana that may have been illegally seized.

We shall discuss those questions on the tentative assumption that there is no real doubt in anyone's mind concerning the ability of the United States to prove the facts alleged in the libel unless the exclusionary rule of evidence for which claimant contends is available to claimant Eaton and applicable to this case.

As will be later provided, Eaton will be afforded ample opportunity to indicate whether this assumption is wrongfully made; and, if so, will be afforded full opportunity to have whatever factual issues that may be in real dispute tried in accordance with applicable law.

We think it obvious that the State court's action in sustaining a motion to suppress the evidence seized at the time of the search in the criminal trials involving the four occupants of the car (which, for the purposes of this memorandum and order we also assume to be true) indicates that a real question exists as to whether there was a lawful seizure of the marihuana when viewed in the perspective of whether evidence obtained by that search would be admissible in evidence in a criminal trial, State or federal, of Richard G. Thomas, the assumed owner of the automobile.

We, of course, do not have such a case before us. The libel is directed against the Cadillac itself. The guilt or innocence of the passengers in that automobile is in no way involved in this case.

■ This forfeiture case, directed as it is against an automobile, involves the narrow question of whether or not a mortgagee of an automobile has requisite standing to object to the introduction of evidence allegedly illegally seized from the occupants of the automobile.

■ We find and determine that while the exclusionary rules developed under the Fourth and Fifth Amendments are applicable to this forfeiture case, claimant Eaton does not have such standing and that unless there is some real question concerning the facts as alleged in the

libel, the forfeiture must be sustained. We base that legal conclusion on reasons that we now state.

The point of beginning is an understanding of the nature of a forfeiture. J. W. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L. Ed. 376 (1921), makes clear that the Congress, in the exercise of its constitutional power, has long imposed responsibilities on the owners and other persons having interests in particular personal property, in aid of the administration of criminal law, by ascribing to such property itself "a certain personality, a power of complicity and guilt in the wrong" (254 U.S. at 510, 41 S.Ct. at 191).

Mr. Justice McKenna pointed out that such legislation finds an analogy in "the law of *deodand* by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited" (254 U.S. at 510, 41 S.Ct. at 191).

Blackstone was cited in J. W. Goldsmith, Jr.-Grant and his reference to the Mosaical law was quoted: "If an ox gore a man that he [shall] die, the ox shall be stoned, and his flesh shall not be eaten." It was also there noted that Blackstone made reference to the equally ancient Athenian law which provided that "whatever was the cause of a man's death, by falling upon him, was exterminated or cast out of the dominions of the republic" (254 U.S. at 511, 41 S.Ct. at 191). When this ancient concept is recalled, our understanding of the law of forfeiture of chattels is more easily understood.

United States v. One Ford Coupe, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926), teaches that the now one hundred year old forfeiture procedures of the United States were applicable to an automobile used to transport liquor in violation of the taxing statutes of the United States. And General Motors Acceptance Corp. v. United States, 286 U.S. 49, 52 S.Ct. 468, 76 L.Ed. 971 (1932), held that the fact that particular mortgagees were themselves innocent of any illegal act in which the mortgaged vehicle may have been involved, was totally immaterial.

Mr. Justice Cardozo noted in that case that "[f]orfeiture of vehicles * * * is one of the time-honored methods adopted by the government for the repression of the crime" (286 U.S. at 56, 52 S.Ct. at 470) and commented that "[t]he penalty is at times a hard one, but it is imposed by the statute in terms too clear to be misread" (286 U.S. at 57, 52 S.Ct. at 471).

In what has been described as a "cryptic opinion", (in Berkowitz v. United States, 1 Cir. 1965, 340 F.2d 168 at 171), Mr. Justice Holmes noted in Dodge v. United States, 272 U.S. 530 at 532, 47 S.Ct. 191, 71 L.Ed. 392 (1926), that policy considerations underlying the sometimes hard penalties involved in the enforcement of a forfeiture statute rest on different grounds than those involved in the establishment of a rule calling for the exclusion of evidence obtained by an unlawful search and seizure.

Mr. Justice Holmes pointed out that "anyone may seize any property for a forfeiture to the Government, and that if the Government adopts the act and proceeds to enforce the forfeiture by legal process, this is of no less validity than when the seizure is by authority originally given." The ground upon which that settled concept is based was explained as follows:

> The owner of the property suffers nothing that he would not have suffered if the seizure had been authorized. However effected it brings the object within the power of the Court, which is an end that the law seeks to attain, and justice to the owner is as safe in the one case as in the other.

The basic theory, of course, is that "[t]he jurisdiction of the Court was secured by the fact that the *res* was in possession of the prohibition director when the libel was filed." We think that what Mr. Justice Holmes said in Dodge is much less cryptic if considered with what Mr. Justice Brandeis said exactly one day earlier in United States v. One

Ford Coupe Automobile, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926). In reliance upon exactly the same authority, Mr. Justice Brandeis held that "[i]t is settled that, where property declared by a federal statute to be forfeited, because used in violation of federal law, is seized by one having no authority to do so, the United States may adopt the seizure with the same effect as if it had originally been made by one duly authorized."

■ Both Mr. Justice Holmes and Mr. Justice Brandeis were paraphrasing the last paragraph of Mr. Justice Story's opinion in The Caledonian, 4 Wheat. 100 at 103, 4 L.Ed. 523 (1819). And we are confident that both were emphasizing the proposition that a forfeiture proceeding quite basically invokes the *in rem* jurisdiction of a court of the United States and that it makes very little difference to any one how initial possession of the *res* was obtained, so long as the proceeding to enforce the forfeiture accords with due process.

We therefore commence discussion of the questions raised by claimant Eaton from the base that this Court has jurisdiction *in rem* over the Cadillac itself and the inquiry is whether contraband, as defined in the statutes, was in fact transported, carried, or conveyed so as to make that Cadillac subject to forfeiture.

One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), of course, answered a question that was an open one when this case was filed. That case established that the exclusionary rule prohibiting evidence seized in violation of the Fourth Amendment is applicable to forfeiture proceedings. That determination, however, does not answer the questions presented by this case because the factual situation there presented was not the factual situation apparently presented in this case.

Our consideration of *Plymouth Sedan* must also take into account that *Plymouth Sedan* did not question the authority of either *One Ford Coupe* or *Dodge* that

we have mentioned above. See footnote 7 on page 700 of 380 U.S., on page 1250 of 85 S.Ct. where Mr. Justice Goldberg discusses both those cases.

The *Plymouth Sedan* case, as did the earlier forfeiture case of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746 (1886), involved proceedings in which a search of an owner's own property was involved.

In *Plymouth Sedan*, McGonigle was both the owner of the car and the subject of the illegal search. Eaton in this case was merely the mortgagee of the automobile and there is no apparent contention that he was the subject of any alleged search in violation of the Fourth Amendment. The automobile ·on which he held a lien may have been the object of an illegal search but claimant Eaton apparently was miles away at the time the search was made.

Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), establishes that "[i]n order to qualify as 'a person aggrieved by an unlawful search and seizure' [quoted from Rule 41(e) of the Federal Rules of Criminal Procedure, which contains the statutory direction governing the suppression of evidence in a federal criminal case] one must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else" (362 U.S. at 261, 80 S.Ct. at 731).

Claimant Eaton, of course, does not fall within either the rationale or the rule of decision announced in the Jones case.

Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), points out that narcotics unlawfully seized on the premises of a person other than the defendant are admissible in evidence against the defendant himself because the defendant's constitutional rights are not violated by a violation of the constitutional rights of some third person.

Mr. Justice Brennan held in *Wong Sun* that "[t]he seizure of this heroin [illegally seized on the premises of a third person] invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial." A comparison of Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942) was invited.

*Goldstein* pointed out that no court had ever gone so far as to exclude evidence seized in violation of the Fourth Amendment unless such a person has the requisite standing to contend that his, as distinguished from a third person's, constitutional rights had been violated. *Goldstein* noted that "federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of unconstitutional search and seizure to object to the introduction in evidence of that which was seized" (316 U.S. at 121, 62 S.Ct. at 1004). And the footnote on that page adds that this "principle has been applied in at least fifty cases by the Circuit Courts of Appeals in nine circuits and in the Court of Appeals for the District of Columbia, not to mention many decisions by District Courts." Additional cases are collected in note 168 to the text of the Fourth Amendment in United States Code Annotated.

It is quite one thing to say that the exclusionary rule enunciated in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and, more recently in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is applicable to forfeiture proceedings. But it is quite a different thing to say that an illegal search of an automobile voids its forfeiture. United States v. Physic, 2 Cir. 1949, 175 F.2d 338, has sometime been misread broadly enough to sustain such an argument, but the late Judge Sanborn, in Ted's Motors v. United States, 8 Cir. 1954, 217 F.2d 777 at 781, quite correctly held that *Physic* said no more than that "contraband evidence will not sustain the seizure of a car for carrying contraband drugs."

Two decisions by the Northern District of Illinois, one by Chief Judge Campbell reported as United States v. Four Thousand One Hundred and Seventy One Dollars ($4,171.00) in United States Currency, N.D.Ill.1961, 200 F. Supp. 28, and an unreported memorandum by Judge Robson, to which Chief Judge Campbell made reference, place the real question involved in this case in focus. Chief Judge Campbell, incidently anticipated the ultimate decision of the Supreme Court in *Plymouth Sedan* and eventually granted the claimant's motion to suppress.

But before Chief Judge Campbell reached the question of whether the search and seizure were invalid he first noted that he must find that the movant had sufficient standing to assert a violation of his, as distinguished from someone else's, constitutional rights. He noted that Judge Robson, on the facts, had held that the particular claimant before the court in Judge Robson's case "did not have 'standing' to move for the suppression of the evidence" there involved.

In his case, Chief Judge Campbell noted:

I acknowledge the qualification under Rule 41 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., requiring the person bringing a motion to suppress to be a "person aggrieved" as those terms are used in the Rule. One is said to be a "person aggrieved" or have the requisite "standing" where such person; 1) owned or possessed the property, or 2) *where he had a substantial possessory interest in the premise searched*. (200 F.Supp. at 31).

On the facts involved in the particular case before him, Chief Judge Campbell held that the facts concerning the particular claimant there involved "clearly establish claimant's possessory interest in the premise searched"; and, as above stated, eventually sustained the motion to suppress although the forfeiture was eventually ordered because the evidence

188

from sources independent of the illegal search and seizure was sufficient to sustain such action.

On the apparent factual situation here involved, this case falls on the same side of the line as Judge Robson's case and on the opposite side from Chief Judge Campbell's.

All the cases with which we are familiar hold that an innocent lienor who was not the subject of the alleged illegal search and seizure has no standing to move for suppression. In addition to the Supreme Court cases above cited see United States v. One 1952 Ford Victoria, N.D.Cal.1953, 114 F.Supp. 458 at 460; United States v. One 1955 Cadillac Eldorado Convertible, E.D.Ill.1957, 148 F. Supp. 752 at 754; and United States v. One 1953 Model Mercury Sedan Automobile, S.D.Ala.1957, 149 F.Supp. 657 at 658.

We need not now examine whether the apparent undisputed evidence of the officer who saw an occupant throw his hand out of the car and drop marihuana would be admissible. A not dissimilar factual situation was involved in Jones v. United States, supra, in which an officer on the street saw a hand come out of a window and put narcotics in a birdnest in the awning of a window. See also and compare Rios v. United States, 364 U.S. 253 at 262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).

We prefer to indicate now definitively that we are convinced that claimant Eaton lacks the requisite standing to raise the search and seizure question and that, therefore, should this case be tried in the usual manner any and all marihuana taken from the Cadillac would be admitted in evidence.

In order to place this case in a posture for trial or for final judgment, counsel for claimant Eaton will indicate whether there are any disputed questions of fact on which he desires a trial or whether a proper stipulation may be entered between the parties that will adequately preserve claimant Eaton's objection to

our indicated ruling on this question of evidence for appellate review.

Counsel for claimant Eaton is directed to make an appropriate response within five (5) days.

It is so ordered.