**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald Huel COLE, Defendant-Appellant.
UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jerry Franklin ROLLINS, Defendant-
Appellant.**

**Nos. 18561, 18562.**

United States Court of Appeals
Sixth Circuit.

Oct. 8, 1969.

Henry V. Grady (Court-appointed) Chattanooga, Tenn., for appellants; Henry V. Grady, Chattanooga, Tenn., of counsel.

Robert E. Simpson, U. S. Atty., Knoxville, Tenn., for appellee.

Before EDWARDS and CELEBREZZE, Circuit Judges, and HOGAN, District Judge.[*]

EDWARDS, Circuit Judge.

Defendants were convicted after jury trial in the United States District Court for the Eastern District of Tennessee, Southern Division, on charges of burglarizing a bank in violation of 18 U.S.C. §§ 2(a) and 2113(b). The bank burglary took place between 5:30 p.m. July 21, 1967 and 8:00 a.m. July 22, 1967, at Etowah, Tennessee. It resulted in a cash loss of $22,516.17.

Appellants resided in Etowah, Tennessee, prior to the date of the bank burglary. They were unemployed and without substantial funds. Both were seen leaving Etowah by automobile in the early hours of the morning of July 22, 1967. There was testimony that just before they left, Rollins had shown a roll of bills and offered to pay a man who had helped them tow their car when it had stalled. That same evening appellants appeared at the apartment of one Daugherty, a cousin of Cole's, in Myrtle Beach, South Carolina. Daugherty was not at home, and whether he gave them any permission to enter and live in the apartment is now in dispute. In the next few days appellants' driving and drinking brought them to the attention of local law enforcement. This ultimately led to a police search of the cousin's apartment, when appellants were not there, under a search warrant which is now conceded to have been invalid. The police found $16,154.63 hidden in the apartment in various places. Subsequently testimony established that some of this money could be identified as coming from the Etowah bank burglary.

On appeal Rollins claims that there is *just not enough evidence to connect him with the bank burglary.* He testified and admitted having considerable sums of

* Hon. Timothy S. Hogan, United States District Judge for the Southern District of Ohio, sitting by designation.

money in his possession in South Carolina. But he claimed he got it from Cole and had no knowledge of its source.

While the question is not without some difficulty, we believe that the several instances where Rollins was shown to be in possession of large sums of money when he was known to have been broke before the bank robbery (See United States v. Amerine, 411 F.2d 1130 (6th Cir. 1969)), his association with Cole in Etowah the morning of the bank burglary and in Daugherty's apartment in Myrtle Beach, and the identification of the money found in the Daugherty apartment was sufficient evidence to uphold a jury finding of guilt beyond reasonable doubt. The fact that evidence of guilt is circumstantial rather than direct does not defeat its probative value. McNamara v. Henkel, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330 (1913); United States v. Stover, 411 F.2d 911 (6th Cir. 1969); Prince v. United States, 217 F.2d 838 (6th Cir. 1954).

The other material issue in the case pertains to the search by which the money was found. The District Judge held that the search warrant was invalid because the affidavit did not recite facts (as opposed to police opinion) constituting probable cause. But he also held that the evidence seized was admissible as to these two defendants because they were trespassers on the premises and had no standing to object. The District Judge relied on Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960). *See also* United States v. Thomas, 342 F.2d 132 (6th Cir.), cert. denied, 382 U.S. 855, 86 S.Ct. 105, 15 L.Ed.2d 92 (1965); United States v. Coots, 196 F.Supp. 775 (E.D. Tenn. 1961).

In *Jones* the Supreme Court said:

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched." Jones v. United States, *supra*, 362 U.S. at 267, 80 S.Ct. at 734.

At hearing on a motion to suppress evidence, (the money seized in the Daugherty apartment) Daugherty testified that he had given Cole permission to use his apartment. At this same hearing, however, an FBI Agent testified about an interview with Daugherty:

"A. He was interviewed at Tri-County Hospital at Fort Oglethorpe, Georgia. He furnished a signed statement concerning his occupancy of an apartment in Myrtle Beach, Apartment 2 of the Normandy Apartments. He told us he had left Myrtle Beach on the 20th of July to come to Chattanooga and Fort Oglethorpe because of the illness of a sister. That he had locked his apartment and had not been back. He said that he had received a telephone call on the evening of the 23rd, I believe, on a Saturday night, the 22nd, I believe it was—let me refresh myself and be sure I'm right on this date.

"Q. Yes, sir.

"A. On the 22nd, Saturday evening, from his mother-in-law who lived in Myrtle Beach and she told him that his cousin Ronnie Cole and the boy that was using the name of Jerry were in his apartment, that they were drinking and that they were mistreating the apartment. He said that he told his mother-in-law to call the Myrtle Beach police and have them put them out of the apartment. He said further that over that weekend, he had been expecting company, a Mr. and Mrs. Couch from West Virginia, to visit him, and that he, of course, had left without being able to notify them because it was an emergency trip, that he got a call the following morning from Mr. Couch from Myrtle Beach saying that they were leaving, going

back to West Virginia because it was uncertain when he was coming back and also told him that Mrs. Couch, his wife, was upset, that she was upset in the way that Ronnie Cole and the other boy were behaving in the apartment, that they were tearing the apartment up. He told me he had not given Ronnie Cole permission to use the apartment, that he was not aware he was in the apartment until his mother-in-law had called him and said a week or so before Ronnie had called him from Etowah and made the comment that he might visit him in Myrtle Beach in a week or two and other than that, he had not known he was coming to Myrtle Beach on this specific date. He told us that when he left he did lock the apartment, that he had no money in the apartment, and that if any money had been found there, it was not his money."

The conflict between Daugherty's testimony and that of the FBI Agent was direct. The District Judge found the facts on this issue in favor of the government's position. He obviously believed the agent and completely discredited Daugherty. We accept his finding, partly because he heard the witnesses and was in a better position than we are to determine their credibility. But we also note that on review of the cold record of the motion hearing, we too find convincing inferences that appellants had no permission to occupy Daugherty's apartment at the time in question.

■ With Daugherty's testimony discredited, we find no basis for reversal of the District Judge's ultimate holding that appellants were without standing to object to admission of the disputed evidence. We believe his finding was equivalent to holding that appellants were wrongfully on the premises, and not entitled to protest invasion of its privacy. Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Appellants, of course, had the initial burden of proof on the motion.

United States v. Thompson, 409 F.2d 113 (6th Cir. 1969).

We find no abuse of discretion in the District Judge's handling of the jury request for rereading of certain testimony.

The judgments of the District Court are affirmed.