**UNITED STATES of America,**
**Appellant,**

v.

**Charles Winfield WEST.**

**No. 71–1687.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 15, 1971.

Decided Jan. 21, 1972.

John G. Abramo, Asst. U. S. Atty., Wilmington, Del., (F. L. Peter Stone, U. S. Atty., on the brief) for appellant.

Karl Haller, Georgetown, Del., for appellee.

Before GANEY, ADAMS, and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

We are here confronted with the novel and intriguing question whether, when an owner of an automobile, at the behest of the police, searches that automobile for a gun alleged to belong to another, the Fourth Amendment has been violated.

The matter arises as the result of an appeal by the Government from an order of the district court, 328 F.Supp. 545, suppressing the introduction into evidence of a shotgun on the ground it is the product of an illegal search. The precise issue is whether it was proper to suppress the shotgun the defendant was charged with possessing, where the search, which followed a statement by the police that "if [Trott and Cannon] couldn't find the shotgun, that [they] could or would be arrested," was conducted by a third-party, Trott, who found the gun in his automobile. At the time of the search, the defendant was incarcerated.

The defendant, Charles W. West, was arrested by the local police on June 5, 1970, and imprisoned for a parole violation. The next day, the Chief of Police, Todd, interrogated West with regard to the possession of a shotgun. West admitted possessing the gun and took the police to his home to find it.[1] They discovered that the house had been burglarized and that the gun was missing. Later that month, Chief Todd and

---

[1] Apparently, West believed that the barrel of his shotgun was of sufficient length so as not to require registration under 26 U.S.C. § 5861(d) (1970).

two Treasury Agents questioned Wilson Trott and his friend, Douglas Cannon. The district court found as a fact that Chief Todd threatened Trott and Cannon with imprisonment if they did not locate the shotgun within one week. Three days later, on June 26, 1970, Trott found the gun jammed into the springs of the seat of his own car, where it had been hidden by someone, probably Cannon. In July, 1970, West signed a statement admitting ownership of a shotgun, describing its purchase, and verifying its loss.

On October 27, 1970, West was indicted for possession of an unregistered weapon, namely a "sawed off" shotgun, on or about June 26, 1970. Thereafter, West moved to suppress the shotgun and the statement of July, 1970. After a hearing, West was reindicted and charged with possession of the same weapon on or about June 5, 1970.[2]

The district court issued a memorandum tentatively suppressing the shotgun, but reserving decision until after a further hearing. At the second hearing, West testified that he did not own the shotgun referred to in the indictment and that he had not transferred any such weapon during June or July of 1970. A supplemental memorandum was then is-

sued by the district court suppressing the shotgun and holding that the statement given in July was not the product of illegal police conduct.[3] An order to this effect was entered on June 14, 1971. The Government has appealed.

To resolve the ultimate issue in this case—the correctness of the district court's order directing that the shotgun be suppressed—it is helpful to examine several subsidiary issues raised by the Government. These issues are (1) the standing of the defendant to object to evidence obtained by transgressing another's Fourth Amendment rights, (2) the scope of the Fourth Amendment with regard to property interests, (3) the extent of the exclusionary rule as applied to searches by private citizens, and (4) the parameters of the Fourth Amendment with regard to searches.[4]

1

The first matter to be resolved is West's standing to move for suppression of the evidence allegedly seized illegally from another. The problem of standing in Fourth Amendment cases has for a considerable period of years been troublesome to courts and commentators.[5]

2. By stipulation, the motions and other papers previously filed were applied to the second indictment.

3. Although the defendant has not appealed from that portion of the opinion denying his motion to suppress the statement, this will not preclude review of that ruling following conviction. Although the statute gives the Government the right to appeal from the grant of a suppression motion, the denial of such a motion is not a final order and is therefore not appealable. Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929). Consequently, since the defendant was unable to cross-appeal at this time, his failure to do so does not constitute a waiver of the objection.

4. At oral argument, this Court raised the issue whether West waived his objection by taking the police to his home to retrieve the gun. However, because of the disposition which we make of the case

today, we do not have to decide this question.

5. In recent years, the question of standing has been widely discussed in the literature. The issue is inextricably bound to the philosophical underpinning of the application of the exclusionary rule as means of enforcing the Fourth Amendment. If the primary purpose of the rule is, as the Supreme Court announced in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), deterrence of illegal police conduct, then perhaps the goal could be best achieved by easing the standing requirements. See Note, Standing to Object to an Unreasonable Search and Seizure, 34 U.Chi.L.Rev. 342 (1967). See generally, White & Greenspan, Standing to Object to Search and Seizure, 118 U. Pa.L.Rev. 333 (1970).

The issue of standing is again before the Supreme Court in United States v. Combs, 446 F.2d 515 (6th Cir. 1971), cert. granted, 404 U.S. ——, 92 S.Ct. 677,

There are two cases, however, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which are controlling as to this issue.

■ In *Jones*, the Supreme Court held that where possession of illegal material is an ingredient of the offense, the indictment charging possession provides a sufficient interest in the material to establish standing. 362 U.S. at 261–265, 80 S.Ct. 725.[6] The principal question in *Simmons* was whether testimony by the defendant at a preliminary hearing to establish standing that the seized items were his could be introduced at trial on the issue of guilt. There, the police had seized from the home of the mother of a co-defendant suitcases containing evidence linking a defendant, Garrett, to the crime of armed robbery of a federally insured savings and loan association. Garrett was not on the premises at the time of the seizure. However, in resolving the issue, the Supreme Court made clear that the rule in *Jones*, that a defendant charged with a crime in which possession of the item in question is an essential element has standing to move to suppress, is still viable:

". . . First, we held that when, as in *Jones*, possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory inter-

est to challenge the admission of the evidence. . . . Throughout this case, petitioner Garrett, has justifiably . . . proceeded on the assumption that the standing requirements must be satisfied.

". . . Garrett evidently was not in Mrs. Mahon's house at the time his suitcase was seized from her basement. The only, or at least the most natural, way in which he could found standing to object to the admission of the suitcase was to testify that he was its owner." 390 U.S. at 390–391, 88 S.Ct. at 974–975.

Thus, Garrett, who presumably owned the suitcase, was held to have standing to suppress it even though the police seized the suitcase as a result of an improper search of a *third party's premises*. By parity of reasoning, West would have standing to suppress the shotgun, which he presumably owned,[7] even though officials seized the gun as a result of an allegedly improper search of a third person's automobile.

■ To demonstrate that West does not have standing to assert the Fourth Amendment violation, the Government relies on Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942). The Government contends that these cases "state the principle that a Fourth Amendment violation can be successfully utilized in a suppression mo-

---

30 L.Ed.2d 661 (1972). There, the court of appeals held that a "moonshine" defendant had no standing to challenge a search warrant for his father's premises, in which he had no possessory or proprietary interest, where the search was conducted when defendant was not present.

6. The other branch of *Jones* held that a person lawfully present in another's apartment has a sufficient possessory interest in the premises to establish himself as a person aggrieved by the search. 362 U.S. at 265–267, 80 S.Ct. 725.

7. In United States v. Cowan, 396 F.2d 83 (2d Cir. 1968), the court held that the FBI had not violated defendant's rights by searching, with the consent of a hotel owner, suitcases apparently abandoned by defendant and legally removed by the hotel from defendant's room pursuant to its lien for unpaid hotel bills. A different result is indicated here, because West never voluntarily transferred the shotgun to anyone. At all material times, he had a superior right to the gun, than had anyone else in possession of it, and thus possessed an important indicia of ownership at the time of the search.

tion only by those whose rights were violated." We do not disagree with this general rule of law. However, we note that in *Alderman*, in remanding the cause, the Supreme Court held that the petitioner would have standing to suppress wiretap evidence either where the Government unlawfully overheard conversations of the petitioner himself or where the conversations occurred on his premises, regardless of his presence or participation therein. 394 U.S. at 176–180, 89 S.Ct. 961. The holding in *Wong Sun* that Wong Sun did not have standing to suppress the narcotics was not inconsistent with *Jones* since Wong Sun had neither a proprietary interest in the seized drugs nor a possessary interest in the searched premises. 371 U.S. at 491–492, 83 S.Ct. 407. In *Goldstein,* the testimony at issue was based on conversations of third parties, not those involving the defendant. 316 U.S. at 119, 62 S.Ct. 1000. There is no indication in the opinion that the defendant's premises or privacy had been invaded. Thus, *Goldstein*, as well as *Alderman* and *Wong Sun*, can be reconciled with *Jones* and *Simmons*.

There is nothing in United States v. Konigsberg, 336 F.2d 844 (3d Cir.), cert. denied Celso v. United States, 379 U.S. 993, 85 S.Ct. 334, 13 L.Ed.2d 344 (1964), which would indicate that West does not have standing. In *Konigsberg*, where the defendants had been charged with possession of merchandise stolen in interstate commerce, the Court distinguished *Jones* on the ground that "[b]oth those statutory provisions permit conviction upon proof of the defendant's possession of the narcotics and, with respect to 26 U.S.C. § 4704(a), of

the absence of the appropriate stamps." *Id.* at 847. However, the crime charged in *Konigsberg* required, in addition to possession, proof of the theft, relation to interstate commerce, knowledge of the theft, and value of the stolen goods.[8] The *Konigsberg* Court recognized that "[t]he *Jones* rule governs as of course in a proper case." *Id.* at 847.

The present situation, according to *Konigsberg,* is proper for application of the *Jones* rule. At the time the district court entered its order, all that the Government had to prove under Section 5861 (d) was possession of a weapon which required registration and that the weapon was unregistered. Although the Supreme Court has ruled that the Government must now prove that the weapon travelled in interstate commerce, United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), possession is still "an essential element of the offense with which the defendant is charged." Simmons v. United States, *supra* 390 U.S. at 390, 88 S.Ct. at 974.[9] Thus, the tests of *Jones* and *Simmons* are satisfied.[10]

**2**

■ The Government's contention that the scope of "the Fourth Amendment does not extend to a property interest in contraband . . . once owned by a defendant but in . . . possession of another" at the time of the search is closely related to its standing argument. In developing that thesis, the Government argues that the Supreme Court, in *Jones*, by holding that standing could be satisfied by a property interest in the searched premises, *sub silentio* overruled United States v. Jeffers,

---

8. The holding in *Konigsberg* has not been followed in other federal circuits. *See* United States v. Price, 447 F.2d 23 (2d Cir. 1971) ; United States v. Allsenberrie, 424 F.2d 1209 (7th Cir.' 1970) ; United States v. Cobb, 432 F.2d 716 (4th Cir. 1970) ; Glisson v. United States, 406 F.2d 423 (5th Cir. 1969) ; Niro v. United States, 388 F.2d 535 (1st Cir. 1968). *See also,* Baker v. United States, 131 U.S.App.D.C. 7, 401 F.2d 958 (1968).

9. The record in this case indicates that the shotgun was transported across a state line after its purchase by West.

10. United States v. Combs, *supra*, n. 4a, does not involve a possessory crime. Therefore, there is no reason to postpone judgment in this case until the Supreme Court decides *Combs*.

342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), which held that a defendant's property interest in the seized contraband conferred standing. The argument is valid, contends the Government, because the *Jeffers* case was never cited in the *Jones* opinion, despite the factual similarity of the cases. Such reasoning, however, ignores the first branch of *Jones,* which holds that where a possessory crime is charged, the indictment suffices to confer standing. West's property interest in the shotgun was established for the purpose of the suppression motion by the indictment, and this interest was protected from illegal searches by the Fourth Amendment despite the fact that another person had dominion and control over the gun. *See* Simmons v. United States, *supra,* 390 U.S. at 390–391, 88 S.Ct. 967.

**3**

██ The next question is whether the exclusionary rule should be invoked to suppress an item surrendered by a citizen because a police officer ordered the citizen to locate the object. It seems clear that the police may not escape the proscription of the Fourth Amendment merely by directing a third party to perform the search and seizure which would be improper if the police themselves did it. *See* Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); Corngold v. United States, 367 F.2d 1 (9th Cir. 1967); Purvis v. Wiseman, 298 F.Supp. 761 (D.Or.1969).[11] Or, to put it another way, the illegal acts of a private citizen may be attributable to the police when the citizen is acting as the agent of the police and within the scope of his instructions. *Cf.* People v. McGrew, 75 Cal.Rptr. 378, 380 (Cal.App. (1969). If the underlying purpose of that rule of law is not to be frustrated, then it appears not to matter whether

the agency relationship is voluntary or induced by duress. *Cf.* Restatement (Second) of Agency § 224 (1957).

In this case, the district court found:

"Sometime during the latter part of June, 1970, Chief Todd, a law enforcement officer of the town of Georgetown, Delaware, and two federal treasury agents had a conversation with Mr. Trott and Mr. Douglas Cannon in an automobile. At that time, Chief Todd told Trott and Cannon that he knew Charles West had a sawed-off shotgun and that he, Todd, wanted that gun. He told Trott and Cannon that they must find the gun for him, that he would give them one week to find it, and that, if they didn't have the gun by the end of that time, he would put them in jail until the gun was found."

The court also determined that Chief Todd's threat "did in fact result in a search of Trott's car and a seizure of the property found therein." Although these findings raise a serious question whether Trott was Chief Todd's agent for purposes of interpreting the Fourth Amendment, the matter does not end there. To activate the exclusionary rule, two other crucial factual elements must appear: that the search was constitutionally prohibited and that Trott was acting within the scope of his agency in making it. Although the district court made no specific finding as to the scope of the authority conferred by Chief Todd, the instruction to Trott to find the gun was unrestricted except as to time, and the record indicates that it was broad enough to cover an illegal infringement of the Fourth Amendment.

The overbreadth of the instruction does not vitiate the search, for even if Chief Todd had specifically told Trott to conduct an illegal search, the shotgun

---

11. In *Lustig,* Mr. Justice Frankfurter explicitly stated that a "search is a search" by an official if he had a hand in it. 338 U.S. at 78, 69 S.Ct. at 1377. Mr. Justice Sutherland, in Byars v. United States, warned that a "court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods." 273 U.S. 28, 32, 47 S.Ct. 248, 249, 71 L.Ed. 520 (1926).

would still be admissible unless it were the fruit of a search that was actually illegal. For example, had Chief Todd told Trott to conduct a warrantless search of a private dwelling, but instead, Trott found the gun abandoned on a public street, the gun would be admissible because the Constitution would not have been violated.

4

.[6] In view of the foregoing analyses, it seems clear that this appeal turns on the single issue whether Trott violated the Fourth Amendment when he searched his own car. The district court concluded that he had, stating that since Chief Todd could not have legally searched the car himself, neither could his agent. But this reasoning has one fatal deficiency—Trott, even assuming he became Chief Todd's agent, would not thereby lose whatever rights he already possessed with respect to his own car. Prior to becoming an agent of the police, Trott could have legally searched his own car, found the shotgun, and turned it over to the police voluntarily, even though Chief Todd ordinarily could not have searched the same car without a warrant.[12] The mere fact that an agency relationship might have arisen between Trott and the police could not encroach upon the right of Trott to enter and search his own car any more than it could suspend Trott's right to enter and search his own house. If the rule were to the contrary, a criminal could safely hide his contraband in the home or car of any policeman, then move to suppress the evidence when the evidence was subsequently discovered.

One other basis exists for validating the search here. While in the context of this case West has standing to object to unconstitutional searches of Trott's automobile, such standing does not confer upon him the right to object to any search of Trott's car at all. It seems that had Trott consented to a search of his car by Chief Todd, any evidence discovered as a result of that search would have been admissible against Trott or anyone else. See Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Commonwealth of Pa. ex rel. Craig v. Maroney, 348 F.2d 22 (3d Cir.), rehearing denied, 352 F.2d 30 (1965), cert. denied, 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966).[13] It follows that if Trott could have consented to the search by Chief Todd, he could have consented to a search by Chief Todd's agent. And, since Trott himself conducted the search—whether or not as Chief Todd's agent—he apparently consented thereto.

Although West did not raise the issue whether Trott's consent was coerced and thereby ineffective, there are sufficient facts in the record to negate the element of coercion. Because there had been a lapse of three days during which Trott was not in custody between the alleged threat and the discovery of the shotgun, it would appear that any taint would have been dissipated by that attenuation. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963).

Accordingly, it was error for the district court to grant defendant's motion to suppress, and the order of the district court will be reversed.

12. Nothing in this opinion should be construed as narrowing the principle that warrantless searches of automobiles are sometimes permissible under proper circumstances.

13. There was no evidence that any relationship arose between Trott and West that would have operated to divest Trott of dominion and control over the car and vest such rights in West. Trott had neither loaned nor leased his car to West. Thus, the situation here is not analogous to those cases in which evidence was suppressed because the owner of property, such as a hotel, consented to the search of premises temporarily rented to someone else. See Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); United States ex rel. Cabey v. Mazurkiewicz, 431 F.2d 839 (3d Cir. 1970).