**Larry BUDD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 8918.**

District of Columbia Court of Appeals.

Argued Dec. 10, 1975.

Decided Jan. 29, 1976.

Rehearing Denied March 4, 1976.

---

Arthur D. Bernstein, Washington, D. C., appointed by the court, for appellant.

Timothy J. Reardon, III, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, FICKLING and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellant was charged with the fatal shooting on August 11, 1973 of Frances Thompson, a taxicab driver, during the perpetration of a rape and robbery. He was convicted by a jury of felony-murder, rape and robbery.[1] The only evidence linking appellant to the crime was a latent fingerprint on a document found in the taxicab at the scene of the murder and the murder

---

4. The police action in the case at bar was within the permissible limits of *Bailey v. United States, supra* (279 A.2d) at 510.

1. D.C.Code 1973, §§ 22–2401, 22–2801, 22–2901.

weapon, a .38 caliber gun, seized by the police during the execution of a search warrant of appellant's home. It is alleged here that the trial court erred in denying appellant's pretrial motion to suppress the gun; that a series of police misdeeds culminated in a denial of his right to due process of law, and that the evidence was insufficient to support his conviction of robbery.

## I

Government evidence on the motion to suppress was that about 5:45 a. m. on October 17, 1973, while detained at the office of the Metropolitan Police Sex Squad on an unrelated matter, appellant telephoned his wife and asked her to "get rid of certain items". This remark was overheard by several Sex Squad officers and its substance was immediately conveyed to members of the Homicide Squad. As a result, Detective Jack B. Hill went to appellant's home at 707 15th Street, N.E., to question appellant's wife. The wife was not at home, but appellant's mother-in-law allowed Hill to enter the house and to look into the couple's basement bedroom. She told him that her daughter was at school taking a test.

Detectives Hill and Robert E. Snyder went to a school at 16th and Park Road, N.W., to interview appellant's wife. The officers explained to her the present charges against her husband and the additional charges that were to be made with respect to the August homicide. They also informed her that if she had removed any evidence from the house, particularly a weapon, and destroyed or otherwise disposed of such evidence she could be charged as an accessory to the homicide. The wife then told the officers about two guns that were in the bedroom when she left home and said she would try and get them for the officers. Later, at headquar-

ters, she gave a written statement to the officers which enabled them to obtain a warrant for the search of the home.

Detectives Hill and Snyder arrived at the house at 4:45 p. m. and began a search of the basement room for the weapons. After about fifteen minutes the officers were called upstairs. There, they found the two guns on the kitchen table, and were told by appellant's sister-in-law that "she had brought them in".[2] Several days later, at the office of the Homicide Squad, the sister-in-law gave a statement in which she said she had taken the guns to the home of appellant's mother and later returned there and brought them back.

Appellant's wife and sister-in-law testified that they felt threatened by the police officers and feared arrest. As a consequence, the guns were returned from the mother's house and surrendered to the officers. Both repudiated their previous written statements. Both said they knew nothing of the guns being in appellant's home before they were retrieved, the sister-in-law stating that she found them in a park. Appellant testified that the guns were his, that they had been in the house when he was arrested that morning, and that he had given no one permission to remove them. To the contrary, he said, he wanted them to remain where they were.

The claim that appellant's motion to suppress was erroneously denied is based on the alleged illegality of two warrantless searches conducted without consent: the first being Officer Hill's initial entrance into appellant's home when he went there to question appellant's wife; the second being a so-called "police-coerced" search and seizure of the weapons from his mother's home. The underlying rationale of this claim is unclear, for according to the testimony the initial entry into appellant's home was permitted by his mother-in-law, who also lived there, and nothing was

---

2. The wife and her sister were not in the house when the police arrived, but they came in during the search.

seized from the home at that time. And the entry by the sister-in-law into the mother's home to retrieve the guns which she had previously taken there can hardly be characterized as either a search or a seizure.

■ The Fourth Amendment protects against government searches and seizures, not those conducted by private parties without government participation. Appellant argues that his wife and sister-in-law were coerced by the police to conduct a search of and return the weapons from the mother's home; that is to say, government officers directed the actions of the two women which resulted in the recovery of the weapons. Appellant attempts to bring the facts of this case within the reasoning of *United States v. West*, 328 F.Supp. 545 (D.Del.1971), *rev'd on other grounds*, 453 F.2d 1351 (3d Cir. 1972). The *West* case is clearly distinguishable, however. There, two citizens were told to find an unregistered sawed-off shotgun which the police believed was possessed by West within one week or they would be jailed. One of the two found the shotgun wedged between the springs in the front seat of his car, seized it and turned it over to the police. The weapon was suppressed in the trial court, but this ruling was reversed on appeal since the gun had been recovered from the citizen's own car and thus, even if directed by government officials, the search was not an illegal one.

■ Here, appellant's wife told the police that the guns were in their home and a warrant was issued for the search of the home. The guns were found in the house, on the kitchen table, after they were returned from an unknown location. The weapons were then seized by the officers. On this evidence the court correctly ruled

that the weapons were seized in the execution of a valid search warrant and properly denied the motion to suppress.

## II

The evidence pertinent to the alleged robbery was that about 10:00 p. m. on August 10, 1973, Mrs. Thompson drove her taxicab into a gas station in Maryland. While there, she spoke with an insurance salesman for about fifteen minutes about payment of an overdue insurance premium and during the conversation she removed an unknown amount of money from a billfold. The money was refused because the salesman did not have the necessary papers to reinstate the policy. Mrs. Thompson put the money back in her pocket book. Sometime after 12:00 a. m., Mrs. Thompson's lifeless body was found in the rear seat of her taxicab which was parked behind a Safeway store at 6th and H Streets, N.E.[3] Two purses, two wallets and an empty change carrier were found in the taxicab.[4] One wallet contained fifty cents and a silver dollar.

■ Although, as in *Bowles v. United States*, 142 U.S.App.D.C. 26, 439 F.2d 536 (1970) (en banc), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971), the question is a close one, we conclude on the facts of this case and the inferences to be drawn therefrom that the evidence presented by the prosecution was sufficient to sustain appellant's robbery conviction. *See also Womack v. United States*, D.C. App., 339 A.2d 37 (1975).

## III

We have examined appellant's due process argument and find it to be without

---

3. A witness had seen the taxicab, with two persons in it, being driven behind the Safeway and parked at about 10:30 p. m. Another witness thought that she had heard two gunshots about 11:00 p. m.

4. There were also some 500 pieces of paper strewn about the taxicab, but the manifest for the date of the offense was missing.

merit. Accordingly, the judgment on appeal is

*Affirmed.*