MANGER ET AL. *v.* STATE

[No. 169, October Term, 1956.]

(Two Appeals In One Record)

*Decided June 24, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Johnson Bowie,* for appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Frank H. Newell, 3rd, State's Attorney,* for Baltimore County on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

On June 1, 1956, there became effective Chapter 116 of the Acts of the General Assembly of that year, adding to Code, 1956 Supp., Art. 35, Secs. 100 to 107, both inclusive, as well as to Code, 1951, Art. 27, Sec. 670A. We will hereinafter sometimes refer to Chapter 116 as "the Act". The

Act (a) made wire-tapping illegal unless authorized by order of court issued beforehand on the verified statement of named law enforcement officials that a specified crime has been or is about to be committed, and (b) said in Sec. 105 that "Only evidence obtained in conformity with the provisions of this sub-title shall be admissible in evidence, and then only in a prosecution for the crime or crimes specified in the court order * * *." Criminal sanctions were provided for violation of the prohibitions of the Act.

Between May 17 and May 23, 1956, on three separate occasions, officers of the Maryland State Police tapped telephone wires leading to a house in Pikesville known as 9 Brightside Avenue, in which were two telephones, one, Hunter 6-8088, listed to Mrs. Wanda Manger, and the other, Hunter 6-7019, to one Gerald Williams. On each occasion police overheard calls to 9 Brightside Avenue concerning bets on horse races. The participants were not identified. On May 28, Sergeant Smith of the State Police made application for a search and seizure warrant, and in his affidavit set forth in considerable detail the conversations intercepted by the wire-tap of May 23. Judge Barrett of the Circuit Court for Baltimore County found probable cause to believe that the gambling laws had been and were being violated at 9 Brightside Avenue and issued the warrant on May 28. On that same day the police executed the warrant and found the appellants, Charles Manger and Morris Schwartz, in a rear bedroom on the second floor of the house. Also in that room was ample evidence of a large and well organized bookmaking operation, which the police seized. Several calls came in while the police were there from persons attempting to place bets.

Before trial each of the appellants filed a motion to quash the search warrants, to suppress the evidence illegally and wrongfully obtained, and for the return of the property seized. These were overruled and trial was had before the court, who found appellants guilty. The appeals are from the judgments and sentences that followed.

Appellants do not contend that the evidence procured in the raid and offered at the trial was insufficient to sustain the convictions if properly admitted. Rather, they argue that

the evidence was inadmissible. First they say that it was barred by Sec. 105 of the Act, and second that the search warrant was invalid because it was issued without probable cause. The first contention has two thrusts. One is that the prohibition of Sec. 105 against admission of evidence not obtained in conformity with the Act is a rule of evidence that became law on June 1, 1956, and was controlling at the time of the trial on June 28, 1956, regardless of the fact that the evidence was obtained before June 1. The other is that the evidentiary prohibition covers not only the conversation overheard by means of the wire-tap but extends to the "fruit of the poisonous tree", as the Supreme Court described it in the second *Nardone* case—*Nardone v. United States,* 308 U. S. 338, 84 L. Ed. 307. On this point they say that the Act bars any evidence "procured by, through, or in consequence of" the forbidden wire-tapping, to use the phraseology of the Bouse Act, Code, 1956 Supp., Art. 35, Sec. 5, as to the fruits of a forbidden search and seizure.

In the view we take of the case we do not reach either thrust of the appellants' first contention. We agree with the State in reading the Act to mean that an accused, not a participant in the conversation overheard by means of an unlawful wire-tap, may not invoke the Act to keep out of a case evidence against him procured by, through, or in consequence of the intercepted conversation. In turning the decision on this point, we do not decide, but assume, (a) that evidence obtained by wire-tapping obtained before, but offered after, June 1, 1956, is subject to the provisions of the Act, and (b) that the ban of Sec. 105 of the Act extends to and embraces the fruits of the conversation unlawfully intercepted.

Maryland has long applied the common law rule that evidence is admissible against one accused of crime, be it felony or misdemeanor, even though it was obtained unlawfully. *Meisinger v. State,* 155 Md. 195; *Salsburg v. State,* 201 Md. 212, aff'd 346 U. S. 545, 98 L. Ed. 281. The Bouse Act, passed in 1929, made an exception to this rule as to misdemeanors, making evidence obtained by an illegal search and seizure inadmissible in such cases. Since the passage of the Bouse Act, this Court has held repeatedly that an accused

who has no interest in the premises searched cannot complain of an illegal search and seizure or bar evidence obtained thereby from being used against him. *Rizzo v. State,* 201 Md. 206, 209, 210; *Baum v. State,* 163 Md. 153. Before the passage of the Act of 1956, it had been established by decisions of the Supreme Court and this Court that wire-tapping was not either a search or a seizure forbidden by the Fourth Amendment or the Constitution or laws of Maryland. *Olmstead v. United States,* 277 U. S. 438, 72 L. Ed. 944; *Leon v. State,* 180 Md. 279.

In this setting and with this background the Legislature passed the wire-tapping Act of 1956. A somewhat similar measure, S. B. 32, was introduced in the 1956 Legislature as a Legislative Council bill. S. B. 32 was based upon H. B. 352 of the 1955 session. See the report of the Legislative Council to the General Assembly of 1956, item 44. The explanation at the head of the draft of the council bill reads in part as follows: "There is presently no prohibition or regulation by State law of wire-tapping and evidence thus obtained is admitted in trials of criminal cases. It is the feeling of the Council that there should be strict regulation of wire-tapping * * * except when done under a court order * * * the court order must specify the crime in connection with which the wire-tap evidence is sought and the evidence so obtained may be used only in connection with that crime." Senate Bill 122, (which emerged as Ch. 116) as introduced in the 1956 Legislature, could well have been based on proposals set forth in an article by *Alan F. Westin* on "The Wire-Tapping Problem" in 52 *Columbia L. R.* 165, and the outline of a proposed statute set forth on pages 200-208. The bill, however, was rather extensively amended in passage through the Legislature. It contains a declaration of policy in Sec. 100, which states: "The right of the people to be secure against unreasonable interception of telephonic and telegraphic communications shall not be violated. The interception and divulgence of a private communication by any person not a party thereto is contrary to the public policy of this State, and shall not be permitted except by court order in unusual circumstances to protect the people. It is further

declared to be the public policy of this State that detection of the guilty does not justify investigative methods which infringe upon the liberties of the innocent." Sec. 101 prohibits the interception of telephonic and telegraphic communications, with certain exceptions in favor of employees of telephone or telegraph companies. Sec. 102 provides for the issuance of court orders under stated conditions for the interception of telephonic and telegraphic communications. Sec. 105 provides: "Only evidence obtained in conformity with the provisions of this sub-title shall be admissible in evidence, and then only in a prosecution for the crime or crimes specified in the court order, in the circuit courts of this State or in the Criminal courts of Baltimore City." It is to be noted that the committee on judicial proceedings, in reporting the bill favorably, amended Sec. 101 (a) (1), changing the requirement for consent to wire-tapping from at least one participant to "the participants". The other amendments do not seem to throw any great light as to legislative intent in regard to the questions before us.

A consideration of Sec. 102 of the Act and the provisions of the search warrant statute, Code, 1951, Art. 27, Sec. 328, show a great similarity between requirements for obtaining a search warrant, so that a search will not be unreasonable under the Bouse Act, and those for obtaining a wire-tap order. The declaration of public policy of the Act is substantially in the language of the Fourth Amendment, which is of significance in light of the fact that neither under the Fourth Amendment nor the Maryland law is wire-tapping a search and seizure. We think the Legislature intended the Act to be in *pari materia* with the Bouse Act. So construed, the Act would not bar the introduction of the fruits of an intercepted conversation against one who was not a participant in the conversation. There is nothing in the record, in the briefs, or in the argument before us to show that either of the appellants was talking on the telephone at any time when the police officers heard conversations as to bets on horse races. In fact, the only names on the Brightside Ave. end of the telephone overheard in the conversations are shown by the record to be other than those of the appellants.

Neither of the telephones is·listed in their names. We hold, therefore, that neither of the appellants had standing to object to the introduction against him of evidence seized in the raid made under the authority of the search warrant, on the ground that the warrant was based on evidence forbidden to be introduced by Sec. 105 of the Act, or to be divulged to any person.

Persuasive is the case of *Goldstein v. United States,* 316 U. S. 114, 86 L. Ed. 1312, which involved an interpretation of Sec. 605 of the Federal Communications Act, providing in part that "* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person". The Court had previously held in the first *Nardone* case— *Nardone v. United States,* 302 U. S. 379, 82 L. Ed. 314— that the phrase "no person" comprehends federal agents and that the ban on communication to "any person" bars testimony at a trial as to the contents of an intercepted message. In *Goldstein* the Court held that the accused, not being a party to the intercepted telephone conversation, had no standing to object to the admission of testimony by witnesses who were guilty of what the accused were allegedly guilty of, induced by divulging to them the contents of intercepted telephone messages. Mr. Justice Roberts said for the Court: "The question now to be decided is whether we shall extend the sanction for violation of the Communications Act so as to make available to one not a party to the intercepted communication the objection that its use outside the courtroom, and prior to the trial, induced evidence which, except for that use, would be admissible." The opinion continued: "No court has ever gone so far in applying the implied sanction for violation of the Fourth Amendment. While this court has never been called upon to decide the point, the federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized. *A fortiori* the same rule should apply to the introduction of evidence induced by the use or disclos-

ure thereof to a witness other than the victim of the seizure. We think no broader sanction should be imposed upon the Government in respect of violations of the Communications Act. The court below was of the view that a divulgence of the intercepted messages might lawfully be made with the consent of the sender, and we agree. The court further thought that, as the sender might make such divulgence lawful by his consent, none but he was intended to be protected against divulgence by the statute. Again we agree." To the contention that the Communications Act also forbade any use of an unlawfully intercepted message and therefore the evidence was inadmissible, the Court's answer was that even though the use by the prosecuting officers of the intercepted calls to induce the testimony was a violation of the statute, "this would not render the testimony so procured inadmissible against a person not a party to the message." Justice Roberts continued: "This is the settled common law rule. There was no use at the trial of the intercepted communications, or of any information they contained as such. If such use as occurred here is a violation of the Act, the statute itself imposes a sanction." Similar conclusions have been reached by other federal courts. See *United States v. Gris,* 146 F. Supp. 293; *United States v. Seeman,* 115 F. 2d 371, 374; *United States v. Guller,* 101 F. Supp. 176, 178. See also *United States v. Benanti,* 244 F. 2d 389; and *Hoffman v. O'Brien,* 88 F. Supp. 490, aff'd by memorandum opinion 339 U. S. 955, 94 L. Ed. 1367. We limit our decision here to the facts of the case before us, holding no more than that one not shown to be a party to the intercepted conversation has no standing to object to the introduction of evidence otherwise admissible obtained by the use of the intercepted communication outside of the courtroom and prior to · the trial. Other problems that the Act may create can be answered when they arise and are presented for decision.

The contention of the appellant that the search warrant was not based on probable cause or satisfactory identification of the telephone line said to be tapped, is without substance. The affidavit on which the warrant was based was made by Sergeant Smith, who has been a member of the police force

for fifteen and a half years, during fourteen years of which he has served in the division of investigation. He has handled a multitude of cases of this nature. His affidavit recites that he and other policemen went to the described premises on three specified occasions and tapped wires leading to Hunter 6-8088, the number of one of the telephones in the premises at 9 Brightside Ave., and on each occasion heard illegal bets on horse races being placed with the person who answered the telephone. On one occasion, the affiant Smith overheard the caller say to the person who answered the telephone at Brightside Ave.: "Hello, Clark—I want two to win on Mowleesha at Garden State." Another conversation was: "Hello. Good morning, Wilson * * *. Listen, what did I do yesterday?" The person answering as Wilson said: "You won $29.00 yesterday." Another conversation was: "Yes—Jimmy M & Hello Polly, one double." The affidavit set forth that the horses mentioned had been verified as horses racing at named tracks on the day in question. Judge Barrett was entitled to rely on the experience and special knowledge of Sergeant Smith and his belief, reinforced by the facts sworn to, that bookmaking was being carried on at 9 Brightside Ave. Certainly the affidavit set forth facts and circumstances that amounted to more than suspicion or possibility, even though not certainty or proof, and this is sufficient under the cases. *Fleming v. State,* 201 Md. 145, 149; *Dean v. State,* 205 Md. 274; *Davis v. State,* 205 Md. 552. It was not necessary that Sergeant Smith state the procedures used in tapping the wire leading to the Brightside Ave. house. It was shown to the court that he went to the house, 9 Brightside Ave., on each day of the days named and tapped the wires of a telephone, identified by its number, and that the telephone with that number was in the house to which he went. We think this was sufficient under the circumstances.

*Judgments affirmed, with costs.*